USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1614 UNITED STATES OF AMERICA, Appellee, v. STEVEN SEALEY, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, Senior U.S. District Judge] __________________________ ____________________ Before Breyer,* Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ _____________________ Juliane Balliro, with whom Balliro, Mondano & Balliro, P.C., _______________ ________________________________ was on brief for appellant. Michael J. Pelgro, Assistant United States Attorney, ____________________ Organized Crime Drug Enforcement Task Force, with whom Donald K. _________ Stern, United States Attorney, was on brief for appellee. _____ ____________________ July 20, 1994 ____________________ ____________________ * Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). TORRUELLA, Circuit Judge. Defendant-appellant Steven _____________ Sealey was charged with a violation of 18 U.S.C. 922(g)(1). Sealey filed a motion to suppress a firearm, a magazine, and ammunition which Sealey discarded while he was being pursued by Boston Police officers. The district court denied Sealey's motion and, following trial, the jury returned a guilty verdict. Sealey now appeals the district court's denial of his motion to suppress. We affirm. I. BACKGROUND I. BACKGROUND __________ A. Facts A. Facts We view the facts in the light most favorable to the district court's ruling to the extent that they derive support from the record and are not clearly erroneous. United States v. _____________ Maguire, 918 F.2d 254, 257 (1st Cir. 1990), cert. denied, 499 _______ ____________ U.S. 950 (1991); United States v. Aguirre, 839 F.2d 854, 857 (1st _____________ _______ Cir. 1988). On February 12, 1991, two individuals were robbed at knifepoint by two black males. Two plainclothes Boston Police Officers, William Donga and William Reynolds, arrived at the scene, and then, with the two victims, drove around the area in an unmarked cruiser, looking for the robbers. Shortly thereafter, the police officers saw Sealey, a black male, carrying a green trash bag over his shoulder. The victims did not identify Sealey as one of the robbers. The officers, however, recognized him from a previous arrest, and decided to approach him. -2- As the cruiser approached Sealey, Officer Reynolds called out "Hey Steven, what's up?" Sealey then looked in the direction of the officers and, without responding to the officer's question, started to run away from the cruiser, dropping the green trash bag as he ran. Officer Donga then chased Sealey on foot. During the pursuit, Sealey discarded a 9mm semi-automatic pistol, a magazine, and ammunition. A police officer finally apprehended Sealey, who was hiding behind a wooden stockade fence, and arrested him. A federal grand jury subsequently returned an indictment charging Sealey with being a felon-in-possession of a handgun in violation of 18 U.S.C. 922(g). B. The District Court's Ruling B. The District Court's Ruling On November 5, 1992, Sealey filed a motion to suppress the physical evidence -- the firearm, magazine, and ammunition. Sealey argued that he was seized when Officer Reynolds shouted out to him from the cruiser and, because the officer lacked reasonable suspicion to stop him, this seizure ran afoul of the Fourth Amendment. Consequently, any evidence that was obtained as a result of this improper seizure should be suppressed. Following an evidentiary hearing, the court denied Sealey's motion. The court found: On these facts, supplemented by the record at the evidentiary hearing, I conclude the defendant was not "seized" until he was finally caught by the police. Accordingly, this case is controlled by California v. Hodari, __ __________ ______ U.S. __ , 111 S. Ct. 1547 (1991). There is no showing that the defendant yielded -3- to a "show of authority" let alone physical force. The inquiry "Hey, Steven, what's up?, unaccompanied by any other demonstration or more forceful verbal command is not an impermissible intrusion by the police. Whether the defendant ran from an unknown threat or because he recognized the police, his flight cannot be considered a "seizure" by the police. The seizure took place when the defendant was finally apprehended, at which point the police had a reasonable basis upon which to detain him. See Terry v. Ohio, 392 U.S. ___ _____ ____ 1, 27 (1968). Sealey now challenges the court's denial of his motion to suppress. II. THE FOURTH AMENDMENT CLAIM II. THE FOURTH AMENDMENT CLAIM __________________________ The dispositive issue on appeal is whether or not the police officers seized Sealey when Officer Reynolds shouted from the cruiser, "Hey, Steven, what's up?"1 Sealey contends that this "show of authority" effectively constituted a stop, therefore triggering Fourth Amendment protections. The government maintains that regardless of whether Officer Reynolds' question constituted a "show of authority," there was no seizure because Sealey ran from the officers and refused to submit to Officer Reynold's inquiry. ____________________ 1 Sealey argues that Officer Reynolds shouted "[c]ome here, we want to talk to you," as the officer got out of the cruiser. Sealey maintains that it was this question and action which incited him to run. The district court's factual finding that Officer Reynolds asked "Hey, Steven, what's up?" is supported by evidence in the record and the finding is not clearly erroneous. See United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). ___ ______________ ______ Moreover, the resolution of this appeal in no way depends on the precise words that Officer Reynolds uttered, and our decision to affirm would be the same even if Officer Reynolds had asked Sealey to come over to the cruiser. -4- As a preliminary matter, we set forth the applicable standard of review with respect to a motion to suppress. A district court's findings of fact will only be disturbed if they are clearly erroneous. United States v. Zapata, 18 F.3d 971, 975 _____________ ______ (1st Cir. 1994); United States v. Rodr guez-Morales, 929 F.2d _____________ _________________ 780, 783 (1st Cir. (1991), cert. denied, 112 S. Ct. 868 (1992). ____________ This deferential standard is appropriate because the district court has a superior sense of what actually transpired during an incident by virtue of its ability to see and hear the witnesses who have first hand knowledge of the events. Zapata, 18 F.3d at ______ 975; Rodr guez-Morales, 929 F.2d at 783. Questions of law, _________________ however, are subject to de novo review. Zapata, 18 F.3d at 975; _______ ______ Rodr guez-Morales, 929 F.2d at 783. _________________ In scrutinizing a district court's denial of a suppression motion, the court of appeals will review findings of fact for clear error, while at the same time subjecting the trial court's ultimate constitutional conclusions to plenary oversight. Zapata, 18 F.3d at 975 (citations omitted). ______ Under the Fourth Amendment, a seizure occurs when a police officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen. Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). In United States v. _____ ____ _____________ Mendenhall, 446 U.S. 544, 554 (1980), a plurality first announced __________ a test to determine if an individual's liberty had been restrained: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances -5- surrounding the incident, a reasonable person would have believed that he was not free to leave." The Supreme Court subsequently embraced this analysis. See Michigan v. Chesternut, 486 U.S. ___ ________ __________ 567, 573 (1988); Immigration & Naturalization Services v. _________________________________________ Delgado, 466 U.S. 210, 215 (1984). The Supreme Court later _______ explained that a person's reasonable belief that he was not free to leave was "a necessary, but not sufficient condition for _________ __________ seizure." California v. Hodari D., 499 U.S. 621, 628 (1991) __________ __________ (emphasis in original). The Supreme Court went on to hold that with respect to a seizure based upon an officer's show of authority, no seizure occurs until the suspect has submitted to that authority. Id. at 626; see also Zapata, 18 F.3d at 976. __ ________ ______ The facts of Hodari D. are analogous to the instant __________ case. In Hodari D., a group of youths fled at the approach of an _________ unmarked police car. 499 U.S. at 623. The police officers were suspicious, and they gave chase. Id. The state conceded that __ the officers did not have the reasonable suspicion required to justify stopping Hodari. Id. at 623 n.1. One officer followed __ the defendant, Hodari, and during the pursuit, Hodari tossed out a "rock" of crack cocaine. Id. at 623. The officer then tackled __ Hodari, and handcuffed him. Id. In the juvenile proceedings __ brought against him, Hodari moved to suppress the evidence relating to the cocaine, and the court denied the motion. Id. __ Hodari appealed and challenged the government's right to introduce the evidence. The admissibility of the evidence turned on whether the police seized Hodari at the moment the chase began -6- or at the time of the tackle. The Supreme Court held that where a suspect fails to submit to an officer's approach and runs away, he is not seized until he is apprehended. Id. at 626. Hodari __ was therefore not seized until he was tackled, and the cocaine was therefore admissible evidence. Hodari D. controls the resolution of this appeal, and _________ requires us to conclude that Sealey was not improperly seized within the meaning of the Fourth Amendment. There is no allegation that any police officer exerted physical force over Sealey; rather, Sealey alleges that he was seized by virtue of Officer Reynold's show of authority. Even if we assume that Officer Reynolds' question to Sealey constituted a show of authority, Sealey did not submit to this inquiry. Instead, Sealey resisted Officer Reynolds, he ran away, and ignored any authority that the officer manifested. While Officer Donga was pursuing him, Sealey then discarded the firearm, the magazine and the ammunition. A police officer finally caught Sealey hiding behind a wooden fence, after he had discarded the contraband. Pursuant to Hodari D., Sealey was not seized until he was caught _________ hiding.2 Because the contraband discarded by Sealey while he ____________________ 2 Sealey does not challenge the district court's ruling that the police had probable cause to arrest him after the chase. Such a challenge would be to no avail. The situation rapidly escalated from one involving a minimum of suspicion to one justifying arrest based upon probable cause. By the time the police located and apprehended Sealey, the police had probable cause to arrest him for violating firearm laws. The officers observed Sealey flee for no apparent reason, and Officer Donga observed Sealey discard a gun during the chase. See, e.g., United States v. ___ ____ ______________ Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987). ________ -7- was running was not the fruit of this seizure, the act of abandonment extinguished his Fourth Amendment claim. See Abel v. ___ ____ United States, 362 U.S. 217, 241 (1959) (a warrantless search or ______________ seizure of abandoned property is not a violation of the Fourth Amendment); United States v. Lewis, 921 F.2d 1294, 1302 (D.C. _____________ _____ Cir. 1990) (when an individual abandons property, he forfeits any reasonable expectation of privacy in it, and consequently police may search it without a warrant). As an initial matter, Sealey appears to contend that this case is controlled by Mendenhall. The argument is that when __________ Officer Reynolds yelled to him, Sealey reasonably believed that he was not free to leave, and the Fourth Amendment seizure should therefore be deemed to have occurred at that point. This argument, however, ignores the teaching of Hodari D., which _________ stated that the Mendenhall reasonableness inquiry was a __________ necessary, but not sufficient condition for seizure. Hodari D. _________ made it clear that no Fourth Amendment seizure occurs until a suspect submits to police authority. Sealey also attempts to argue that his case is distinguishable from Hodari D., and that case's "submission" _________ requirement is not applicable to the circumstances of this case. Sealey claims that when the police officers, who were dressed in plainclothes, yelled to him from their unmarked cruiser, he did not realize that they were police officers. Rather, he suspected that they were private citizens out to get him. Sealey therefore argues that the test to determine when a seizure occurs should be -8- modified so that the seizure is deemed to occur at the moment when the words and actions of the officers would have caused a reasonable person to believe that his personal safety was in jeopardy. Sealey's argument, however, cuts against, not in favor, of his position. A seizure is generally deemed to have occurred when a defendant believes that his liberty has been interfered with by virtue of a police officer's exertion of physical force or show of authority. If Sealey ran away because he believed he was being approached by private citizens, there is even less of a case for a "seizure" taking place because Sealey would not be acting in response to an officer's interference, or under the belief that his liberty was restricted by governmental power. Additionally, one of the necessary prerequisites for a seizure -- a reasonable belief by Sealey that he was not free to leave the police officer's authority -- would be missing. Sealey's argument is simply illogical. To conclude, we believe that the court properly determined that the police officers did not seize Sealey until after he had fled, abandoned the contraband, and was finally apprehended. Therefore, the firearm, the magazine and the ammunition were not the fruit of an unconstitutional seizure, and the court properly admitted the contraband into evidence. For the foregoing reasons, we affirm the ruling of the _______________________________________________________ district court. ______________ -9-