USCA1 Opinion

 

 June 13, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2094 UNITED STATES, Appellee, v. JOSE A. BERNARDO-RODRIGUEZ, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _____________________ Mar a H. Sandoval, by Appointment of the Court, for ___________________ appellant. Warren V zquez, Assistant United States Attorney, with whom ______________ Guillermo Gil, United States Attorney, and Jos A. Quiles- ______________ _________________ Espinosa, Senior Litigation Counsel, were on brief for appellee. ________ ____________________ ____________________ Per Curiam. Defendant-appellant Jos A. Bernardo- Per Curiam ___________ Rodr guez appeals his conviction for possession with intent to distribute two kilograms of cocaine in violation of 21 U.S.C. 841(a)(1). Specifically, Bernardo-Rodr guez claims that his conviction rests on evidence found in an unlawful search, and the district court's denial of his motion to suppress this evidence was in error. For the following reasons, we affirm. BACKGROUND BACKGROUND __________ We view the facts in the light most favorable to the ruling court's decision to the extent that they derive support from the record and are not clearly erroneous. United States v. _____________ Sealey, 30 F.3d 7, 8 (1st Cir. 1994). While working at the Luis ______ Mu oz Mar n International Airport in Puerto Rico on May 23, 1993, Puerto Rico Police Officer Rafael Pacheco-Cruz ("Officer Pacheco") noticed the appellant acting nervously and avoiding contact or confrontation with airport or law enforcement officials. Bernardo-Rodr guez was walking awkwardly and sweating profusely, yet was wearing a jacket completely buttoned. Officer Pacheco observed a square-shaped object protruding from the right side of Bernardo-Rodr guez' abdominal area. Officer Pacheco followed Bernardo-Rodr guez to the control station at the gateway, where he observed Bernardo-Rodr guez nervously trying to adjust the front of his jacket. At the control station, Bernardo-Rodr guez passed through the metal detector once uneventfully. At Officer Pacheco's request of airport security personnel, Bernardo- -2- Rodr guez was directed to remove his jacket and walk through the metal detector a second time. While Bernardo-Rodr guez was removing his jacket, one of his shirt buttons became unbuttoned, allowing Officer Pacheco to more clearly see the square-shaped object protruding from the right side of his stomach. The officer then moved to Bernardo-Rodr guez' left and observed the same sort of square-shaped object there. At this point, Officer Pacheco approached Bernardo-Rodr guez and asked, "What do you have there?" Bernardo-Rodr guez replied, "What are you talking about?" The officer repeated his question, slightly touching Bernardo-Rodr guez' abdomen. Officer Pacheco then asked Bernardo-Rodr guez to follow him. Once out of public viewing, Officer Pacheco asked Bernardo-Rodr guez to lift his shirt. When Bernardo-Rodr guez complied with this request, two packages strapped to his abdomen under a lycra exercise belt became visible.1 Officer Pacheco then arrested Bernardo-Rodr guez and seized the packages, in which cocaine was later found. ANALYSIS ANALYSIS ________ As explained above, we review findings of fact on a  ____________________ 1 Bernardo-Rodr guez testified that he never voluntarily lifted his shirt, but that Officer Pacheco lifted it without Bernardo- Rodr guez' consent. He now contends that the magistrate judge erred in disregarding his version of events and crediting that of Officer Pacheco. Credibility determinations, however, are the province of the presiding court in a suppression hearing, and we review them only for clear error. United States v. Zapata, 18 _____________ ______ F.3d 971, 975 (1st Cir. 1994). This deferential standard stems from the presiding court's opportunity to hear the testimony, observe the witnesses' demeanor, and evaluate the facts first- hand. Id. Because we find no indication in the record that the __ magistrate judge's credibility determinations were clearly erroneous, we uphold his factual findings. -3- motion to suppress only for clear error. Zapata, 18 F.3d at 975. ______ Notwithstanding the deference given to factual determinations, however, we review questions of law de novo. Id. __ ____ __ In challenging the denial of his motion to suppress, Bernardo-Rodr guez' primary contention is that the seizure of the cocaine was the result of an illegal "pat-down" frisk search by Officer Pacheco. Specifically, he challenges the presiding court's finding that Officer Pacheco's detention of Bernardo- Rodr guez was a lawful Terry stop. See Terry v. Ohio, 392 U.S. _____ ___ _____ ____ 1, 23 (1968). Bernardo-Rodr guez contends that under Terry, _____ Officer Pacheco could not lawfully touch him in the abdomen, because he had already gone through a metal detector and therefore could not have had a weapon. Officer Pacheco's slight touching of his abdomen, says Bernardo-Rodr guez, rendered the detention unlawful, and the contraband found as a result should have been suppressed. It is elementary that under Terry, "where a police _____ officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions. Terry, 392 U.S. at 30. The officer may also conduct _____ a patdown search, or "frisk," where the officer is justified in believing that the person is armed and dangerous to the officer or others. Id. This protective search must be "limited to that __ which is necessary for the discovery of weapons which might be -4- used to harm the officer or others nearby." Id. at 26. __ In the instant case, however, the contraband was not found through the disputed touching, but only after Bernardo- Rodr guez had lifted his shirt and Officer Pacheco saw the packages. The narrow issue, therefore, is whether Officer Pacheco's slight touching of Bernardo-Rodr guez' abdomen was sufficiently coercive to convert the detention into an unlawful seizure, and thus render the subsequent consensual search invalid. We find that it was not. If otherwise lawful Terry stops become sufficiently _____ coercive, they become de facto or constructive arrests, and thus __ _____ must be supported by probable cause rather than mere reasonable suspicion. Zapata, 18 F.3d at 975. In such cases, reviewing ______ courts must determine whether under the circumstances "'a reasonable man in the suspect's position would have understood his situation' . . . to be tantamount to being under arrest." Id. (citing Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). If __ ________ _______ so, then probable cause must support the officer's detention and use of force on the suspect. Id. If probable cause is not __ present, then the stop is an unreasonable seizure, and any subsequent consent given by the suspect to further searches is deemed involuntary. Id. __ Although physical contact is relevant to the reasonableness of a suspect's perception that he is under arrest, not every physical contact between an officer and a suspect constitutes coercion. Zapata, 18 F.3d at 977. We have recently ______ -5- recognized that an officer need not have probable cause for certain de minimis uses of force incident to legitimate __ _______ investigatory stops. Id. In Zapata, we rejected the appellant's __ ______ argument that a slight touching by the officer during an investigatory stop rendered the seizure invalid, holding that a "modest laying-on of hands" by an officer on a suspect during a otherwise lawful investigatory stop did not convert the detention into an unlawful arrest unsupported by probable cause. Id. at __ 976-77. Officer Pacheco's initial detention of Bernardo- Rodr guez was certainly supported by reasonable suspicion, particularly given the square objects visibly protruding from Bernardo-Rodr guez' abdomen, and his unusual, nervous behavior. Moreover, we believe that Officer Pacheco's slight, unintrusive touching -- hardly more than a gentle poke -- of Bernardo- Rodr guez' abdomen during the lawful detention was de minimis. __ _______ It is much less intrusive than a pat-down or handcuffing, both of which have been upheld as lawful uses of physical force incident to a Terry stop. See Zapata, 18 F.3d at 977 (citing United States _____ ___ ______ _____________ v. Willis, 967 F.2d 1120, 1223 (8th Cir. 1992) and Tom v. Voida, ______ ___ _____ 963 F.2d 952, 958 (7th Cir. 1992)). The touching is simply insufficient to convert the stop into a constructive arrest unsupported by probable cause. We conclude that Bernardo- Rodr guez was not unlawfully seized and therefore find that his motion to suppress was properly denied. For these reasons, we affirm his conviction. ______ -6-