HILL, Circuit Judge.
The defendant, Quinton Smith, was arrested by Boston police officers and charged with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Smith moved to suppress the gun, claiming that it was seized in violation of his rights under the Fourth Amendment. After a three-day hearing, the court granted the motion. This appeal followed.
I.
At approximately 1:30 p.m. on September 16, 2002, uniformed Boston Police Department officers Tarantino and Griffin were in their marked police cruiser patrolling, when they passed Smith, who was sitting on a 2-3 foot wall behind the sidewalk on Woolson Street. The sidewalk was approximately seven feet wide. There was a telephone pole in front of Smith and a *27 house with a chain-link fence enclosing the side-yard behind him.
The officers passed Smith as they drove down Woolson Street. Although both testified that they regularly patrolled the area and were familiar with the “locals,” neither officer recognized Smith. They circled the block and returned to the spot where Smith was still sitting. Griffin leaned out the passenger window and asked Smith if he lived at the house behind him. Smith said that he did not. Griffin then asked Smith what he was doing sitting on the wall. Smith responded that he was waiting for the bus that stops on the corner across the street. Griffin asked Smith if he meant the bus that stops approximately 100 feet across the street and around the corner from where he was sitting. Smith said yes, and Griffin asked him why he was not at the bus stop itself. Smith responded that he could catch the bus from where he was sitting.
The officers got out of their patrol ear to fill out a Field Intelligence and Observation Report (“FIO”).[1] Tarrantino and Griffin approached Smith and stood on either side of the telephone pole that was directly in front of him. Neither officer drew his weapon. Griffin asked Smith for identification or his name. Smith produced identification. As Griffin started back to the patrol car to run Smith’s name through the mobile data terminal, Smith told the officers that they would find that he had an outstanding warrant for a motor vehicle violation. Griffin’s data check revealed that Smith did, indeed, have an outstanding arrest warrant for receiving stolen property (motor vehicle license plates).
The officers then undertook to arrest Smith, who resisted by dragging the officers down the sidewalk and flailing his arms and punching. After subduing Smith, the officers searched him, finding a loaded .25 caliber automatic pistol with one round in the chamber and three in the magazine in his waistband. The officers also found three plastic bags of marijuana on him.
Smith filed a motion to suppress all evidence derived from the search, contending that he was seized within the meaning of the Fourth Amendment at the time the officers approached him and requested his name or identification. He also argued that this seizure was not supported by reasonable suspicion because the only thing the officers knew at that time was that he was a black man in a high crime area.
The government argued that Smith was not seized until the police officers confirmed his admission of the outstanding warrant and attempted to arrest him. Pri- or to that time, the government asserts, the encounter was consensual. Since Smith was arrested pursuant to a valid warrant, the government contends that the search was incident to a lawful arrest and, therefore, the evidence is admissible.
The district court rejected these arguments, concluding that Smith was seized when the officers exited their car to further question him because, at that point, Smith reasonably believed that he was not free to refuse to answer and leave. 332 F.Supp.2d 277, 282-83 (D.Mass.2004). Furthermore, the court held, the seizure was unconstitutional as the officers had no reasonable suspicion to exit their patrol car to question Smith because his explana *28 tion regarding his presence there was “absolutely plausible.” Id. at 286. Since the seizure was unconstitutional, the court held that the gun and ammunition found on Smith is inadmissible at trial. Id. Our review of these conclusions of law is de novo. United States v. Cardoza, 129 F.3d 6, 13-14 (1st Cir.1997). Couching conclusions of law as findings of fact will not alter the standard of review.
II.
While the Fourth Amendment protects against unreasonable searches and seizures, not all encounters between law enforcement officers and citizens constitute seizures. The Supreme Court has made clear that “[l]aw enforcement officers do not violate the Fourth Amendment’s prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.” United States v. Drayton, 536 U.S. 194, 200-01, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). “There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.” United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (quoting Terry v. Ohio, 392 U.S. 1, 34, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (White, J. concurring). We, too, have affirmed that the police may “approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment.” United States v. Young, 105 F.3d 1, 6 (1st Cir.1997).
On the other hand, a seizure may certainly occur without actual physical restraint. If an officer, by means of show of authority, even briefly restrains the liberty of a citizen, we may conclude that a seizure has occurred. Terry, 392 U.S. at 19, 88 S.Ct. 1868. In order to find a seizure, however, we must be able to conclude that coercion, not voluntary compliance, most accurately describes the encounter. Men-denhall, 446 U.S. at 554, 100 S.Ct. 1870. In the absence of evidence of coercion, “otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.” Id. at 555, 100 S.Ct. 1870.
Furthermore, since most tend to feel some degree of compulsion when confronted by law enforcement officers asking questions, such discomfort cannot be the measure of a Fourth Amendment seizure. If it were, officers would effectively be barred from approaching citizens at all, absent full-blown probable cause. In Mendenhall, the Supreme Court made clear that “characterizing every street encounter between a citizen and the police as a ‘seizure,’ ... would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.” Id. at 554, 100 S.Ct. 1870. Without the authority to approach and briefly question a citizen, “those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished. Id. (internal citations omitted).
In order to avoid such an unsatisfactory result, the Court has made clear that only when a citizen’s freedom of movement is objectively restrained is there any foundation for invoking constitutional safeguards. Id. at 553, 100 S.Ct. 1870. No seizure occurs when officers approach a citizen to ask a question unless it was objectively reasonable for that person to believe that he was compelled to stay and answer the question. Id.
Nor may we infer such belief from the fact that the person stayed to answer the *29 question. Id. “While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.” INS v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Although a person may regret staying to answer an officer’s questions, as Smith apparently does, such regret does not transform an otherwise consensual encounter into an unconstitutional seizure. Mendenhall, 446 U.S. at 556, 100 S.Ct. 1870. In sum, “[ujnless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.” Delgado, 466 U.S. at 217, 104 S.Ct. 1758.
The real question in this case, then, is not whether the police were entitled to approach Smith to ask him a few questions, but, rather, whether they did so in a manner that would have communicated to a reasonable person that he was not free to refuse to answer and walk away. If so, Smith was seized prior to his admission regarding the outstanding warrant, and the evidence subsequently discovered was correctly suppressed by the district court.[2]
In Mendenhall, the Supreme Court described some of the circumstances whose presence led it to find permissible questioning, rather than impermissible restraint:
The events took place in the public concourse. The agents wore no uniforms and displayed no weapons. They did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents. They requested, but did not demand to see the respondent’s identification and ticket.
446 U.S. at 555,100 S.Ct. 1870. The Court summarized these examples of circumstances that might indicate a seizure as (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person; and (4) the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.[3] Id. at 554, 100 S.Ct. 1870. The Court has also made clear, however, that this list of factors is not exhaustive and no single factor is dispositive in any case. “[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers’ requests or otherwise terminate the encounter.” Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). We have consistently observed *30 this admonition. Cardoza, 129 F.3d at 15; Young, 105 F.3d at 6.
III.
In this case, the officers did not activate the patrol car’s siren or lights. They did not summon Smith to the car, or ask him to move from his seat on the wall, or demand that he do anything. When they exited the car, the officers, although in uniform, did not unholster their weapons. They stood in the only place they could — on either side of the telephone pole directly in front of Smith. Immediately upon approaching Smith, without any further questions regarding his conduct, they asked him for identification, or his name. At this point, Smith informed the officers about his outstanding arrest warrant. Smith remained seated on the wall until, after the warrant was confirmed, the officers attempted to arrest him, at which point he tried to flee.
We conclude that under the totality of these circumstances, Smith was not seized prior to his arrest. Although the two officers were armed, neither drew his weapon at any time. Neither officer ever touched Smith. They did not accuse him of any crime, or attempt to question him about a specific event. When they exited their car, the officers merely approached Smith requesting his identification, or even just his name. Such a non-threatening request does not elevate an otherwise consensual encounter between a citizen and the police into a seizure. See, e.g., United States v. Wade, 400 F.3d 1019, 1022 (7th Cir.2005) (requests for identification do not constitute a seizure); United States v. Granillo, 288 F.3d 1071 (8th Cir.2002); United States v. Sanchez, 89 F.3d 715 (10th Cir.1996).
Nor was the officers’ tone of voice sufficient to escalate the encounter into a seizure. Smith testified that the first question from the police (“do you live here?”) had a “pretty aggressive” tone and the second question (“what are you doing there?”) was voiced with sarcasm. He did not testify that the tone or content of subsequent questions escalated. We have previously held that the crucial question is whether the questions themselves communicate to the citizen that he is compelled to stay and answer. Cardoza, 129 F.3d at 15-16. In this case, the officers’ questions were general and non-threatening. Even if asked with sarcasm, they did not communicate a command to stay.
Nor did the officers restrict Smith’s freedom of movement when they approached him as he sat on the wall. Although the district court concluded that the positioning of the officers restrained Smith because “effectively they surrounded him,” photographs in evidence established that they stood where they had to, given that the telephone pole was in front of Smith, and that Smith could have moved in a variety of directions, including to the bus stop, down the sidewalk, or into the side-yard behind him.
Furthermore, even if the pole and the wall created the illusion of being restrained, it must be remembered that mere physical limitations on an individual’s movement, not created by police, are insufficient to turn an encounter with police into a restraint of liberty. Bostick, 501 U.S. at 436, 111 S.Ct. 2382. In Bostick, the Supreme Court refused to find a seizure when the defendant was on a bus and police came down the aisle toward him, blocking his path. Similarly, in Delgado, the Court rejected the argument that stationing federal agents at the exits of a factory rendered the subsequent questioning of the workers a seizure. 466 U.S. at 218-19, 104 S.Ct. 1758. Finally, in United States v. Brown, 169 F.3d 89, 92 (1st Cir.1999), we held that there was no seizure *31 when an officer confronted the defendant on a stairwell, blocking his path. We conclude that, to the extent that there was any apparent physical restriction of Smith’s movement, it was largely a function of the physical environment and, in all events, insufficient- to constitute a seizure [4] When the freedom of movement of a. person is limited by a physical obstruction not created by the police, the correct test for seizure is not “free to leave,” but free to terminate the encounter by refusing to answer questions. Bostick, 501 U.S. at 436, 111 S.Ct. 2382. This Smith surely could have done.
We conclude that, under all the circumstances of this encounter, an objectively reasonable person would have felt free to decline the officers’ requests or otherwise terminate this encounter. Smith could have declined to provide his identification or answer further questions and, as the officers testified, nothing further would have happened to him. The fact that he did not terminate the encounter does not indicate that he felt restrained, or that if he did, that was an objectively reasonable reaction under the circumstances.[5]
In fact, Smith’s attempt to avoid being seized by fleeing upon being arrested demonstrates that he had not been seized. To constitute a seizure, there must not only be a show of authority sufficient to make a reasonable person believe that he was not free to leave, but also submission to that authority. California v. Hodari D., 499 U.S. 621, 626-29, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). If a defendant manifests his belief that he has not been seized by attempting to flee, he has not submitted to a show of authority and, therefore, has not been seized. Id. Following Hodari D.,. we have held that in cases where the seizure depends upon a show of authority,,“no seizure occurs until the suspect has submitted to that authority.” United States v. Sealey, 30 F.3d 7, 9 (1st Cir.1994); Young, 105 F.3d at 6 (“in *32 the absence of an officer’s exertion of physical force or an individual’s submission to a show of authority, no seizure occurs”). In this case, Smith remained seated on the wall until the officers arrested him. At that point, he fought with them and attempted to flee. Thus, Smith’s own actions indicate that he had not submitted to their authority, and, therefore, was not seized prior to that time. Id.
IV.
We conclude that, under the totality of the circumstances surrounding the encounter between Smith and the officers, it was not objectively reasonable for Smith to believe that he was compelled to remain and answer the officers’ questions. The fact that he did remain does not indicate otherwise. Accordingly, the judgment of the district court granting the motion to suppress and suppressing the evidence in this case is
REVERSED and REMANDED to the district court for further proceedings not inconsistent with this opinion.
Dissenting opinion follows.

. An FIO is routinely compiled by patrolling officers to record a person's name, nickname, residential address, date of birth, social security number and type of clothing worn in order to develop information on who is spending time in an area. Compliance with an officer's request for such information is voluntary.

. The government does not argue, as it did below, that, if Smith was seized prior to the discovery of the outstanding arrest warrant, the seizure was reasonable because the officers' had articulable suspicion based upon Smith’s claim to be waiting for a bus when he was sitting across the street from the stop.

. The district court concluded that three of these factors were present in this case: there were two officers who were "armed and in uniform;” their presence was threatening because when they exited their patrol car, "effectively they surrounded Smith and blocked his path to the bus stop.” United States v. Smith, 332 F.Supp.2d 277, 283 (D.Mass.2004). Furthermore, the district court said, the officers used "an increasingly aggressive tone.” Id. These circumstances indicated to the district court that "the questions were going to continue, whether Smith wanted to leave or not." Id.

. The dissent reaches the opposite conclusion based upon the view that the district court’s findings of historical fact and inferences from these facts compel a different result. Smith, 332 F.Supp.2d at 283. While it is true that these findings and inferences are entitled to deference, Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), such deference does not insulate the district court's separate legal conclusion of Fourth Amendment seizure from de novo review. Cardoza, 129 F.3d at 14. Couching the legal conclusion of "seizure” as a finding of fact (Smith was "surrounded” and could not leave) does not alter the correct standard of review.
Our review of a lower court's disposition of a suppression motion is bifurcated: we review the court's findings of fact for clear errof. Id. át 13. "Conversely, we review conclusions of law de novo, subjecting constitutional interpretations to plenary review.” Id. at 14 (citing Ornelas, 517 U.S. at 697, 116 S.Ct. 1657). The conclusion, reached after review of all the facts of the encounter, that a seizure triggering the protections of the Fourth Amendment has occurred is a constitutional interpretation. Id. at 13. As such, we are free to reach a different result. See Ornelas, 517 U.S. at 697, 116 S.Ct. 1657 (independent appellate review of these ultimate constitutional determinations is consistent with the unitary system of law).

. It certainly cannot be argued that Smith's possession of the gun and ammunition establishes that it was objectively reasonable for him to believe that he was compelled to answer the officers' questions. “[T]he 'reasonable person' test presupposes an innocent person.” Bostick, 501 U.S. at 438, 111 S.Ct. 2382 ("We do reject, however, Bostick’s argument that he must have been seized because no reasonable person would freely consent to a search of luggage that he or she know contains drugs”). As long as a reasonable innocent person, as opposed to a person knowingly carrying contraband, would feel free to refuse to answer questions, an encounter with police officers approaching an individual to ask a few questions is consensual. United States v. Laboy, 979 F.2d 795, 798 (10th Cir.1992).