# United States Court of Appeals
## For the First Circuit

Nos. 05-2229, 05-2230

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

CURTIS HOLLOWAY,
True Name: Curtis Kareem Holloway,
a/k/a Curtis H. Holloway,
a/k/a Curtis K. Holloway,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella, Circuit Judge,

Stahl, Senior Circuit Judge

and Howard, Circuit Judge.

Syrie D. Fried for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom
Michael J. Sullivan, United States attorney was on brief, for
appellee.
Anne C. Goldbach, President, on brief for amicus curiae
Massachusetts Association of Criminal Defense Lawyers.

August 31, 2007

**HOWARD**, **Circuit Judge**.  Curtis Holloway conditionally pleaded guilty to one count of being a felon in possession of ammunition, see 18 U.S.C. § 922(g)(1), and he was sentenced to time served.  The government appeals the sentence, and Holloway cross-appeals the district court's denial of his motion to suppress.

**I.**

We recount the facts in the light most favorable to the district court's ruling on the motion to suppress, but only to the extent that they have support in the record and are not clearly erroneous.  See United States v. Sealey, 30 F.3d 7, 7 (1st Cir. 1994).

On December 26, 2001, special officers[1] Anthony Crutchfield and Shaheed Hall were patrolling the streets around housing projects in the Roxbury section of Boston, Massachusetts.  At 10:30 p.m., the officers saw Holloway chasing another individual, Memogne Lamothe.  As Holloway drew closer, the officers saw him reach into his pants pocket, as if for a weapon.  Lamothe ran inside the building at 144 Seaver Street, and the door locked behind him, preventing Holloway from following him.  Holloway waited outside for several minutes, speaking with various individuals.  Ultimately, Gerald Scott arrived and spoke with Holloway.  Scott proceeded to shuttle back and forth between

---

[1] These security officers were licensed by the Boston Police Department to patrol housing developments.

Holloway and the entryway to the building at 144 Seaver Street, apparently talking to someone inside. Holloway and Scott were then "buzzed" into the building.

Fearing a continuation of the earlier chase, Crutchfield and Hall immediately called their supervisor, Patrick Bailey, and the three officers entered the building using their pass key. Once inside, the officers saw Holloway, Scott, and Lamothe talking on the stairway in a common area of the building. The officers approached the men and asked what was going on. Holloway stated that nothing was going on, but Lamothe responded that he lived in the building, that he knew they should not be loitering in a common area, and that they would continue their conversation in his apartment. At this point the officers asked the three to provide identification. Scott and Lamothe cooperated, but Holloway refused. The officers persisted, and Holloway continued to say that he did not have to give them identification. Lamothe then unlocked his apartment door, but the officers directed him not to move. Lamothe complied, but Holloway suddenly shoved Lamothe into the officers and ran into the apartment. Hall and Crutchfield followed, with Hall entering first and immediately yelling "Gun." Upon entering, Crutchfield saw Holloway sitting on a chair and ordered him to the ground. Holloway was arrested after a struggle, and the officers recovered a loaded pistol that Hall had seen Holloway shove under the seat of his chair. Holloway was

subsequently indicted for being a felon in possession of ammunition that traveled in interstate commerce.  See 18 U.S.C. § 922(g)(1).

Holloway moved to suppress the ammunition on the grounds that the officers had neither reasonable suspicion that criminal activity was afoot to justify a Terry[2] stop nor probable cause to arrest when they seized Holloway.  Therefore, Holloway maintained, any evidence that resulted from the wrongful seizure must be suppressed.  After an evidentiary hearing, at which only Crutchfield testified, the district court denied the motion without opinion.  Thereafter, Holloway entered a plea of guilty, conditioned on the right to appeal the denial of his suppression motion.

At sentencing, the government argued that Holloway should be sentenced to a mandatory fifteen-year prison term under the Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e),[3] on the basis of Holloway's three Massachusetts convictions for assault and battery.  The government argued that each conviction was a "violent

---

[2] Referring to the brief investigatory stop described by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968).

[3] The ACCA provides that:

> In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense...such person shall be fined under this title and imprisoned not less than fifteen years....
> 18 U.S.C. §924(e)(1).

-4-

felony"[4] under the ACCA because each was based on a charging document which alleged that Holloway did "assault and beat" the victim. Holloway argued that assault and battery under Massachusetts law includes two types of conduct--harmful (violent) conduct and nonharmful (offensive or nonconsensual) conduct--and only convictions under the first prong are crimes of violence. Holloway emphasized that the "assault and beat" language was used to charge both types of batteries, and thus the charging language was mere "boilerplate" that said nothing about the nature of the underlying crime. Holloway further contended that the convictions could not be deemed predicate violent offenses under the ACCA without violating the principles set forth in United States v. Shepard, 544 U.S. 13 (2005), and Taylor v. United States, 495 U.S. 575 (1990) because there were no other relevant judicial materials describing the facts of the Massachusetts convictions. The district court accepted Holloway's position and sentenced him to time served.

---

[4] [T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year...that-
      (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
      (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....

18 U.S.C. §924(e)(2)(B).

## II.

### A. Motion to Suppress

Holloway maintains that the district court erred in denying his motion to suppress because the officers lacked the reasonable suspicion necessary for a Terry stop. Holloway emphasizes that the officers only saw three men having a peaceful conversation in the stairwell, with no hint of violence or other criminal activity. The government rejoins that Holloway was never seized, as he never submitted to the officers' authority.

In evaluating a district court's assessment of a motion to suppress, we review findings of fact for clear error and legal conclusions de novo. United States v. Meada, 408 F.3d 14, 20 (1st Cir. 2005). We "will uphold a denial of a motion to suppress if any reasonable view of the evidence supports it." United States v. Garner, 338 F.3d 78, 80 (1st Cir. 2003) (internal citation and quotation omitted).

The primary issue is whether Holloway was "seized" by the officers in the hallway before he dashed into the apartment. "Under the Fourth Amendment, a seizure occurs when a police officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen." Sealey, 30 F.3d at 9. The show of authority must be such that a reasonable person would believe that he was not free to leave. See United States v. Smith, 423 F.3d 25, 28-29 (1st Cir. 2005). In addition, a seizure

requires that the citizen must actually submit to the show of authority. See California v. Hodari D., 499 U.S. 621, 626-629 (1991); Smith, 423 F.3d at 31-32.

The record makes it abundantly clear that Holloway never submitted to the officers' show of authority. Holloway verbally rejected the officers' instructions before escalating his resistance by shoving Lamothe into the officers and trying to flee. Such conduct does not manifest an intent to submit to the officers' authority. See, e.g., Smith, 423 F.3d at 31-32 (attempting to flee and struggling with officers indicates no submission to police authority); Sealey, 30 F.3d at 9-10 (ignoring officer's questions and fleeing was not submission to authority). Holloway was not actually seized until the officers physically overpowered and handcuffed him in Lamothe's apartment. See Hodari D., 499 U.S. at 629 (suspect not seized until tackled by officer). Thus, the officers' recovery of the gun that Holloway discarded before being arrested was not the result of a wrongful seizure. See generally Sealey, 30 F.3d at 10 (contraband discarded by suspect while fleeing police was not fruit of the seizure).

Holloway counters that he was "seized" when he submitted to the officers' show of authority by initially answering their questions, even if his answers were unsatisfactory to the officers. This contention is unpersuasive for a host of reasons. First, the officers' initial approach and general inquiry did not trigger

Fourth Amendment scrutiny even though Holloway responded.  See Smith, 423 F.3d at 28 (officers may approach citizens and ask questions without any degree of suspicion).  Similarly, "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." Hiibel v. Sixth Judicial Dist. Ct., 542 U.S. 177, 185 (2004)(internal citation and quotation omitted).  Lastly, Holloway's verbal challenges to the officers' authority -- generally to the effect that the officers had no authority to bother him or ask for identification -- were not submissions to the authority but part of his conduct in evading it.

### B. Sentencing

The government argues that the district court erred in refusing to sentence Holloway under the ACCA.  The government emphasizes that the charging documents for each of the Massachusetts convictions specified that Holloway did "assault and beat" his victim, which the government maintains suffices to show that the underlying crime was a violent rather merely offensive battery.  Holloway rejoins that the "assault and beat" language in the Massachusetts charging documents is not determinative because it is mere boilerplate and says nothing about the nature of the underlying offense.  We review the district court's interpretation of the ACCA de novo.  United States v. Miller, 478 F.3d 48, 50 (1st Cir. 2007).

Holloway's contention is foreclosed by our precedent which holds that a Massachusetts charging document that states the defendant "assault[ed] and beat" the victim is sufficient to establish that the conviction was for a violent battery and therefore a "crime of violence" for purposes of the guidelines. See United States v. Estevez, 419 F.3d 77, 82 (1st Cir. 2005), cert. denied, 546 U.S. 1192 (2006); United States v. Santos, 363 F.3d 19, 23-24 (1st Cir. 2004); United States v. Mangos, 134 F.3d 460, 464 (1st Cir. 1998); see also United States v. Fink, ___F.3d___, ___ (1st Cir. 2007). Moreover, we have stated that the definitions of "violent felony" in the ACCA and "crime of violence" in U.S.S.G. § 4B1.1 are essentially the same, and that we may look to cases dealing with either to inform our categorical inquiry. See, e.g., United States v. Leahy, 473 F.3d 401, 411-12 (1st Cir. 2007); United States v. Jackson, 409 F.3d 479, 479 n. 1 (1st Cir. 2005). At bottom, our focus is on the usual type of proscribed conduct. Santos, 363 F.3d at 23. Thus, we interpreted the charging language in the most reasonable sense--that "the assault amounted to a beating" of the victim. Mangos, 134 F.3d at 464. Indeed as the Supreme Court recently held, "[w]e do not view [the categorical approach] as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." James v. United States, 127 S. Ct. 1586, 1597 (2007).

"[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, present a serious risk of injury to another." Id.[5]  Thus, the district court's conclusion was in error.

Holloway identifies no change in the law that warrants our disregard of this circuit precedent.  Instead, Holloway (and the amici) look backward to our decision in United States v. Harris, 964 F.2d 1234 (1st Cir. 1992), arguing that our post-Harris precedent fundamentally misinterpreted Harris.  However, it is axiomatic that new panels are bound by prior panel decisions in the absence of supervening authority.  See, e.g., United States v. Allen, 469 F.3d 11, 17-18 (1st Cir. 2006).  Only the Supreme Court or an en banc court can overturn prior panel precedent in ordinary circumstances, and until such time, we are bound by Estevez and Santos.

### III.

For the reasons stated above, Holloway's conviction is **affirmed**, his sentence is **vacated**, and the case is **remanded** for resentencing consistent with this opinion.

---

[5] We also note, as did the prior panels, that there is nothing in the record to suggest that the batteries at issue here were of the offensive rather than the violent variety.  See Santos, 363 F.3d at 24; Mangos, 134 F.3d at 464.

-10-