# United States Court of Appeals
# For the First Circuit

No. 08-2382

UNITED STATES OF AMERICA,

Appellee,

v.

JAMONT DUBOSE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Ebel,[*] Circuit Judges.

Daniel J. Cloherty, by appointment of the court, with whom Victoria L. Steinberg and Dwyer & Collora, LLP were on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellees.

August 31, 2009

[*]Of the Tenth Circuit, "sitting by designation".

**EBEL**, <u>Circuit Judge</u>.    Defendant-Appellant Jamont Dubose challenges the district court's denial of his motion to suppress evidence found when he was stopped and frisked by the police.    After the district court denied his motion to suppress, Dubose pled guilty to being a felon in possession of a firearm, but preserved his right to appeal the denial of his motion to suppress.    This timely appeal followed.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I.  Background

"We relate the facts 'as the trial court found them, consistent with record support.'"  <u>United States</u> v. <u>Am</u>, 564 F.3d 25, 27 (1st Cir. 2009) (quoting <u>United States</u> v. <u>Ruidíaz</u>, 529 F.3d 25, 27 (1st Cir. 2008)).    In the afternoon of February 22, 2007, two Boston Police Officers, Officers Canuto and Ryan, witnessed a Camry double-parked on Fairmount Street, near the corner with Washington Street. Shortly thereafter, the officers observed Jamont Dubose walk down Washington Street, turn on Fairmount Street, and approach the Camry.    Dubose then leaned into the front driver's side of the Camry and, with both hands and his upper torso inside the vehicle, had a brief encounter with its occupants.    He then turned around and walked back the

way he came.  Because of the location of the car and the configuration of the streets, Dubose could not have seen the Camry on Fairmount Street from where he was walking on Washington Street.  Therefore, Officer Canuto concluded that this was a pre-arranged meeting.  Given the brief nature of the meeting, the fact that it appeared to have been pre-arranged, and the fact that this encounter fit the description of drug transactions that had previously occurred in the area[1], the officers thought that they may have witnessed a drug transaction.

Their suspicions aroused, Officers Canuto and Ryan decided to question Dubose.  They turned their car around, parked at an angle facing the wrong way on the street, and with their badges displayed, began walking towards Dubose. Officer Ryan soon became sidetracked speaking with some pedestrian bystanders, so Officer Canuto approached Dubose alone.  Officer Canuto stated that, as he approached Dubose, who was walking away with his right hand in his sweatshirt pocket, he said, "Excuse me, sir, can I talk to you for a second?"  (Appx. at 10, 52, 95.)  Initially, Dubose ignored

[1] Although brief pre-arranged drug transactions were fairly common in this area, the district court explicitly found that this area was not a "hot spot" of criminal activity at that time.  However, Officer Canuto had previously made arrests in the area and a shooting had occurred there about four months before the events leading to this case.

him and kept walking. However, after Officer Canuto repeated the question in an increasingly loud voice a few more times, Dubose, with his right hand still in his sweatshirt pocket, turned around and faced Officer Canuto. Concerned that Dubose might have a firearm in his pocket, Officer Canuto told him to remove his hand from his pocket. Dubose initially refused to do so but, after Canuto repeated his order a number of times, Dubose "reluctantly complied" with Officer Canuto's demands. (Appx. at 11.) Because of Dubose's reluctance to remove his hand from his pocket, his nervous demeanor, and Officer Canuto's prior experience with drug dealers who often carry weapons, Officer Canuto decided to conduct a pat-frisk of Dubose's sweatshirt pockets.

As he patted Dubose's sweatshirt, Officer Canuto immediately noticed a hard object that he suspected might be a firearm and asked, "What is this?" (Id. at 69.) Dubose responded, "It's not mine." (Id.) Officer Canuto then reached into the pocket and retrieved a loaded .22 caliber revolver. Officer Canuto alerted Officer Ryan that he had retrieved a firearm. Dubose then attempted to flee and, after a brief foot chase, the officers subdued him. As the officers were arresting him, Dubose stated, "I just found it and picked it up." (Id. at 11.)

In September 2007, a grand jury indicted Dubose for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and charged that, if convicted, his firearm would be subject to the forfeiture provisions of 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). Dubose filed a motion to suppress the evidence found during his encounter with the police, arguing that the search and seizure that led to the recovery of the firearm in his possession were conducted in violation of the Fourth Amendment to the United States Constitution and Article 14 of the Massachusetts Declaration of Rights.[2] In March 2008, the district court issued a written opinion denying Dubose's motion to suppress. In June 2008, Dubose notified the court of his intent to enter a conditional plea of guilty to Count I of the indictment, expressly preserving his ability to appeal the district court's denial of his motion to suppress. See Fed. R. Crim. P. 11(a)(2). On October 2, 2008, the court

---

[2] Although Dubose also mentions the Massachusetts Declaration of Rights in his opening brief, he fails to actually quote the Declaration or any cases interpreting the relevant portion of that document. Instead, the substantive portions of his brief are focused exclusively on his federal constitutional challenge to the admissibility of the evidence in this case. Following Dubose's lead, this court will address only the federal constitutional issues in this case. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (stating that, on appeal, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

- 5 -

entered judgment against Dubose on Count I of the indictment, and sentenced him to 180 months' imprisonment. This timely appeal, challenging the order denying his motion to suppress as well as the judgment and sentence, was filed on October 8, 2008.

## II. Analysis

## A. Standard of Review

"This court applies a mixed standard of review for orders granting or denying suppression. [This] court reviews a district court's findings of fact and credibility determinations on a suppression motion for clear error and its conclusions of law *de novo*." United States v. Andrade, 551 F.3d 103, 109 (1st Cir. 2008) (citation omitted). "We recount the facts in the light most favorable to the district court's ruling on the motion to suppress, but only to the extent that they have support in the record and are not clearly erroneous." United States v. Holloway, 499 F.3d 114, 115 (1st Cir. 2007); see also United States v. Cook, 277 F.3d 82, 84 (1st Cir. 2002) ("We construe the record in the light most favorable to the district court's ruling, drawing reasonable inferences in the government's favor."); United States v. Nee, 261 F.3d 79, 84 (1st Cir. 2001) (explaining that "[t]his deferential standard requires that an appellate court exhibit great respect for the presider's

opportunity to hear the testimony, observe the witnesses' demeanor, and evaluate the facts at first hand") (quoting United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994)) (internal quotation marks omitted).

## B. Dubose Was Seized

A person is seized when the police restrain that person's liberty. Holloway, 499 F.3d at 117. The Supreme Court has distinguished two kinds of restraint: physical or a verbal "show of authority" that would compel a reasonable person to comply. California v. Hodari D., 499 U.S. 621, 626 (1991). Physical force alone is a seizure. Id. at 624-25. But when an officer makes a show of authority instead, the person is not seized until the person submits to the show of authority by complying with the officer's instruction. Id.; Holloway, 499 F.3d at 117. Once the person complies, his liberty has been restrained and he is seized under the Fourth Amendment. United States v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994).

When Officer Canuto first approached Dubose, he said, "Excuse me, sir, can I talk to you for a second?" (Appx. at 10, 52, 95.) Initially, Dubose ignored him and kept walking, but after Officer Canuto repeated the question in an increasingly loud voice, Dubose, with his hand in his sweatshirt pocket, stopped and turned to face Officer

Canuto. Office Canuto several times ordered Dubose to take his hand out of his pocket because the officer feared Dubose might have a gun. Dubose initially refused to comply, but after several such commands by Officer Canuto, eventually he complied.

We need not get excessively embroiled in whether the seizure occurred when Dubose stopped walking and turned to face Officer Canuto or whether it occurred a few seconds later when he removed his hand from his sweatshirt in response to Officer Canuto's command. Only a few seconds elapsed during this interaction which is best analyzed as a single ongoing encounter that should be viewed holistically, rather than bifurcated into artificially small increments.

We have no difficulty concluding that by the time Dubose had complied with Officer Canuto's demand that he stop and remove his hand from his sweatshirt pocket, there had been a seizure.

## C. Dubose's Seizure Was Justified by the Officers' Reasonable and Articulable Suspicion of Criminal Activity

"A law enforcement officer ordinarily may not stop someone and restrain his freedom to walk away unless the officer has a reasonable and articulable suspicion of criminal activity." Cook, 277 F.3d at 85 (internal quotations omitted). The seizure in this case was justified because, when Officer Canuto seized Dubose, he had "a

reasonable and articulable suspicion" that Dubose had engaged in criminal activity.

Officer Canuto testified that he became suspicious of Dubose because of the brief nature of his meeting with the occupants of the Camry, the fact that their meeting appeared to be pre-arranged, the fact that Dubose leaned his entire upper body into the car during the interaction, and that Dubose's conduct was similar to the conduct involved in other drug transactions in the area. While there may have been an entirely innocent explanation for Dubose's conduct, Officer Canuto is a six-year veteran of the Boston Police Department, and we owe a measure of deference to his expertise in interpreting the events in this case. See Ruidíaz, 529 F.3d at 29 (stating that the determination of reasonable suspicion "requires a practical, commonsense determination—a determination that entails a measurable degree of deference to the perceptions of experienced law enforcement officers") (citation omitted); United States v. Trullo, 809 F.2d 108, 112 (1st Cir. 1987) (deferring to police officer's conclusion that defendant was acting suspiciously when he sat in his car, engaged in a brief conversation with another individual who subsequently entered the defendant's car, then drove with this individual to a nearby deserted side street where they engaged in a

further conversation, and the individual then exited the defendant's car and went back in the direction the defendant had just driven).[3]

Further, Dubose's initial refusal to remove his hand from his pocket after having been ordered to do so provided additional substantiation of Officer Canuto's suspicion. There is no doubt that Officer Canuto had reasonable suspicion to seize Dubose.

## D.  Officer Canuto's Search of Dubose Was Appropriate

After Officer Canuto succeeded in seizing Dubose, he decided to conduct a pat-down search of Dubose's outer clothing. Officer Canuto's limited search of Dubose's outer clothing was justified by legitimate concerns for his safety.

Officer Canuto testified that after Dubose turned around with his hand still in his pocket, he became fearful that Dubose was carrying a weapon. He stated that drug dealers often carry weapons concealed in their waistbands, and,

---

[3] Of course, we will not blindly adhere to an officer's assertion that certain conduct appeared suspicious. See Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992) (noting that relying exclusively on a police officer's experience to determine whether a seizure was justified by reasonable suspicion "would effectively transform the police officer into a judge, and the court into a rubber stamp"). However, an officer's expertise in interpreting criminal conduct is certainly a factor in this court's determination of reasonable suspicion.

because that is not a very secure position for a gun, they often keep their hands in their pockets to ensure the gun does not fall down. Officer Canuto's concerns were further compounded by Dubose's initial refusal to remove his hand from his pocket, and Dubose's nervousness during this encounter. The combination of Dubose's interaction with the Camry's occupants, his initial refusal to heed Officer Canuto's order to remove his hand from his pocket, and his nervousness during his encounter with Officer Canuto, together with Officer Canuto's experience in dealing with drug transactions that often involve guns, were sufficient to justify a pat-down of Dubose's outer clothing. See Trullo, 809 F.2d at 113-14 (holding that protective frisk was justified when officers had reasonable suspicion that defendant had engaged in an illegal drug transaction, the officers' experience showed that people engaging in drug crimes often carried firearms, and the officers noticed a bulge in the defendant's pocket); United States v. Harris, 313 F.3d 1228, 1236 (10th Cir. 2002) (holding that officer was justified in conducting a protective frisk of defendant's clothing primarily because "[d]efendant refused to take his hands out of his pockets after [police officer] requested that he do so"); see also United States v. Aitoro, 446 F.3d 246, 253 (1st Cir. 2006) ("When an officer sees a

bulge in a detainee's clothing and reasonably believes that bulge to be a concealed weapon, under the right circumstances the officer will have license to search the detainee.").

During the pat-down of Dubose's outer garments, Officer Canuto felt a hard object that he thought might be a firearm. He asked Dubose, "What is this?" (Appx. at 69.) Not exactly answering the question, Dubose responded, "It's not mine." (Id.) Officer Canuto then reached into the pocket and retrieved a loaded .22 caliber revolver.

Officer Canuto's decision to reach into Dubose's pocket was justified by his reasonable belief that the object he felt was a firearm. As we said in Trullo, 809 F.2d at 114,

> Once the "pat down" confirmed that the article in appellant's pocket had the characteristics of a weapon, the officer was justified in reaching into the pocket and seizing it. The officer had reasonable grounds to believe that appellant was armed and dangerous. It was therefore imperative, for the safety of the officers and the general public, that the officer take the action that he did. We hold that such conduct clearly was reasonable under the Fourth Amendment.

Officer Canuto's justifiable belief that he had detected a firearm in Dubose's sweatshirt pocket, in combination with Dubose's strange response to Officer Canuto's question about the object in his pocket, clearly justified his decision to reach in and retrieve the firearm in Dubose's pocket.

**III.  Conclusion**

For the foregoing reasons, we AFFIRM the district court's denial of Dubose's motion to suppress.