# United States Court of Appeals
## For the First Circuit

Nos. 18-2208
     18-2257

UNITED STATES OF AMERICA,

Appellee,

v.

CUWAN MERRITT; MICHAEL ARTIS,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Selya, and Barron,
Circuit Judges.

Amy L. Fairfield, with whom Fairfield & Associates, P.A. was on brief, for appellant Merritt.
Gail M. Latouf for appellant Artis.
Paul T. Crane, Attorney, U.S. Department of Justice, Criminal Division, Appellate Section, with whom Brian A. Benczkowski, Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney General, Halsey B. Frank, United States Attorney, and Julia M. Lipez, Assistant United States Attorney, were on brief, for appellee.

December 19, 2019

**LYNCH**, **Circuit Judge**.  Defendants Cuwan Merritt and Michael Artis were each convicted of possession with intent to distribute cocaine base.  They appeal the district court's denial of their motions to suppress drugs found on each of them.  The court denied the motion on the basis that the police had probable cause to stop an automobile in which the defendants were known to be traveling with two confidential informants near Lewiston, Maine.  Merritt also challenges the district court's ruling admitting co-conspirator statements under Federal Rules of Evidence 801(d)(2)(E) and 403, and United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977).

We affirm the denial of the motions to suppress, the admission of the evidence against Merritt, and their convictions.

I.

A.   Facts

We draw the facts relevant to the present appeal primarily from the district court's supportable findings in its ruling following an evidentiary hearing on the motions to suppress. Our review is "consistent with record support, with the addition of undisputed facts drawn from the suppression hearing." United States v. Hernandez-Mieses, 931 F.3d 134, 137 (1st Cir. 2019) (citing United States v. Dancy, 640 F.3d 455, 458 (1st Cir. 2011)). We add facts relevant only to Merritt's evidentiary challenge in our discussion of that claim.

- 2 -

On May 12, 2017, Drug Enforcement Administration ("DEA") Task Force Agent David Madore received a phone call from Gary Hesketh, a confidential informant, who was in Maine. Agent Madore had worked with Hesketh since February 2017, and Hesketh had provided reliable information that resulted in drug arrests and convictions. Hesketh had a criminal history involving illegal drug possession, among other things. Agent Madore paid Hesketh for his help, but only after determining that Hesketh's information aided a particular police investigation.

In that call, Hesketh told Agent Madore that a crack dealer had called his cell phone from out of state and wanted a ride at 7:30 p.m. from Boston's South Station to Lewiston, Maine, to bring a load of crack. Hesketh said he was not sure who the caller was, but thought it might be Mayo, a black male whom Hesketh had met once. Hesketh said that when he had loaned his phone to his cousin, who had a drug addiction, Mayo had called the cell phone, trying to reach Hesketh's cousin. Agent Madore had seen Mayo through prior surveillance and was aware that Mayo was a drug dealer who lived out of state but sold drugs in Lewiston.

Hesketh told Agent Madore that, before settling on needing a ride from Boston, the caller had first told Hesketh that he might need a ride from New York or New Hampshire, depending on "how far they could get," but certainly from out of state. Hesketh believed that these comments indicated that the phone call and

- 3 -

requested ride were related to drugs.   Hesketh also told Agent Madore that the caller told Hesketh that he would "be hooked up" in exchange for the ride, which Hesketh and Agent Madore reasonably understood to mean that the caller would give Hesketh drugs.

After more communications between Hesketh and Agent Madore by phone, by text, and in person, and more phone calls between Hesketh and the person who had called him, Hesketh agreed to pick the caller up in Boston that same evening.  Because Hesketh did not have a driver's license, Agent Madore arranged for Heidi Lemieux, another confidential informant, to drive Hesketh to South Station to pick up the caller and then return to Lewiston.  Hesketh provided his ex-wife's car for the trip.

Hesketh and Lemieux left for Boston at 5:30 or 6:00 p.m. Agent Madore was concerned for their safety and asked Hesketh to relay information to Agent Madore by phone or text.

When they arrived at South Station, Hesketh called Agent Madore to say that the caller had informed him that he was running late.  Agent Madore told Hesketh that he and Lemieux could choose either to wait or to return to Maine without the caller, and they waited.

After 10 p.m., Hesketh informed Agent Madore that two black men had arrived, and that neither was Mayo.  Hesketh conveyed some of this information during a phone call from a gas station in Massachusetts where the four stopped after leaving South Station

and some of it by text. At Agent Madore's request, Hesketh texted him as they reached New Hampshire, Maine, and various mile markers in Maine, and Agent Madore responded that law enforcement would be on the highway waiting for their automobile.

Agent Madore had arranged for a traffic stop at Exit 75 of the Maine Turnpike, the exit the automobile would take en route to Lewiston. After midnight, police pulled over the automobile as it exited the highway there. Officers forcibly removed the two black male passengers from the automobile's back seat and patted them down for weapons.

A state trooper with a drug-detecting dog, who had been awaiting the automobile, had the two men, who turned out to be defendants Merritt and Artis, stand next to another officer and then had the dog sniff each of the three. The trooper walked the dog around Merritt and Artis and then manually directed the dog from the feet to the torso on each. The dog alerted on Merritt's front pocket area and Artis's crotch area, but did not alert on the officer. The dog then also sniffed Hesketh, Lemieux, and the automobile's interior, and did not alert.

Officers then searched the two men and found a bag of crack cocaine in Artis's pants, but did not find drugs on Merritt. Both were arrested. During a more thorough search at the Androscoggin County Jail, corrections officers found a plastic

baggie, later shown to contain crack cocaine, partially hanging out of Merritt's rectum.

B.   Legal Proceedings

Merritt and Artis were both indicted for possession with intent to distribute cocaine base, and both moved to suppress the drugs found on them.   The district court held an evidentiary hearing, at which Agent Madore, Hesketh, and Lemieux testified. The district court orally denied the motions, holding that Agent Madore had reasonable suspicion sufficient to justify a stop of the vehicle and its occupants under Terry v. Ohio, 392 U.S. 1 (1968).

Artis's attorney filed a motion for clarification of the district court's suppression ruling on the issue of whether the vehicle stop and dog sniff were Terry stops, supportable by reasonable suspicion, or instead constituted a de facto arrest, which would require probable cause.[1]

After the district court accepted supplemental briefing on that question, it issued a written decision and order to replace its earlier bench ruling.   The court found Agent Madore credible and noted that Hesketh "did not contradict Agent Madore's testimony" and that, "to the degree there was any inconsistency,

_____

[1]    Artis's attorney died after the district court's initial ruling on the motions to suppress. His new attorney filed the motion for clarification.

- 6 -

. . . it was based on [Hesketh's] uncertainty about what he expressed to Agent Madore at the time in question, as opposed to what he was thinking in his own mind."

The district court concluded that the police had probable cause to arrest Merritt and Artis for drug trafficking before the police stopped the car on the exit from the highway.[2] As a result, it held, the officers' actions were constitutionally sound whether the stop and search required reasonable suspicion or probable cause.

Artis pled guilty, preserving his right to appeal the suppression ruling.

Merritt proceeded to trial. Before trial, he filed a motion in limine to exclude statements made by Merritt, Artis, and Hesketh, arguing that the statements were hearsay and that they were unduly prejudicial. The district court denied that motion. At trial, Merritt objected to the admission of Hesketh's testimony. The district court overruled the objection and admitted the testimony provisionally under United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980). At the close of evidence, Merritt renewed the objection, which the court again denied.

---

[2] Although the government had also argued that the police had probable cause to arrest Merritt and Artis for conspiracy, which the defendants denied, the district court did not address that argument.

These appeals followed the conviction and the imposition of sentences.

## II.

In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law, including its ultimate constitutional determinations, de novo. See United States v. Flores, 888 F.3d 537, 543 (1st Cir. 2018). "[W]e will uphold a denial of a suppression motion as long as 'any reasonable view of the evidence supports the decision.'" United States v. Clark, 685 F.3d 72, 75 (1st Cir. 2012) (quoting United States v. Woodbury, 511 F.3d 93, 96-97 (1st Cir. 2007)).

The defendants argue that their initial seizure at Exit 75 near Lewiston, including their forced removal from the car and the intrusive dog sniff, amounted to a de facto arrest, supportable only by probable cause. The defendants do not dispute that the seizure and search were permissible if the officers had probable cause to arrest. The prosecution argues that the officers did have probable cause to arrest Merritt and Artis before the automobile stop.

"[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." Michigan v. Summers, 452 U.S. 692, 700 (1981). "[P]robable cause exists when an officer, acting upon

apparently trustworthy information, reasonably can conclude that a crime has been or is about to be committed and that the suspect is implicated in its commission." Morelli v. Webster, 552 F.3d 12, 21 (1st Cir. 2009). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983), and "is a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules," id. at 232. It "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).

Defendants stress that probable cause must be assessed on the basis of the totality of the circumstances, relying on Maryland v. Pringle, 540 U.S. 366, 372 n.2 (2003). From this they argue that the totality of the circumstances shows less than probable cause. Their primary argument is that there was no investigation or corroboration of a traditional informant tip that a crime was being or was about to be committed. They say that Agent Madore should have investigated more or attempted to corroborate what they call a "specious tip."

Defendants then make a second argument that there was no probable cause to believe there was a conspiracy. As to that, they argue that Lemieux's testimony reveals that she never heard either defendant mention drugs during the drive from Boston to Lewiston. They argue there was no evidence of a conspiracy between

the two defendants. Nor, they argue, was there any evidence connecting the two defendants to Mayo. The latter argument is irrelevant. We will assume arguendo that evidence of the crime of conspiracy, as opposed to the crime of possession with intent to distribute, was relevant to the probable cause determination. As we explain, the defendants have failed to show why the district court erred in finding the evidence as to probable cause for each sufficient.

"To determine whether an officer had probable cause for an arrest, 'we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (quoting Pringle, 540 U.S. at 371). "The existence of probable cause must be determined in light of the information known to the police at the time of the arrest." United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994) (citing Maryland v. Garrison, 480 U.S. 79, 85 (1987)). We analyze whether the information available to Agent Madore before the vehicle stop supports a finding of probable cause.

As the district court found, Agent Madore received a tip from a reliable informant who himself had past drug involvement and who was paid only for good information. The informant told Agent Madore that a crack dealer wanted transportation from Boston

- 10 -

to Lewiston to sell crack and that the dealer would provide crack in exchange for the ride. Agent Madore then sent Hesketh and another informant to Boston to provide the ride, and Hesketh informed him that the caller had been delayed and of Hesketh's electing to wait until the caller's arrival. Two people showed up at the delayed time and place described and got in the car. The four drove north toward Lewiston while Hesketh kept Agent Madore updated on their progress.

The district court reasoned that "[i]t would be common sense to believe that someone who turned up for a ride at South Station after calling to ask for a ride from South Station to Lewiston to sell drugs and promising drugs to the person providing the transportation was in fact carrying drugs with him." It added that "[t]he presence of two males rather than one does not alter that conclusion," noting that "[n]o innocent explanation is apparent for a companion when one male had asked for a ride to Lewiston to sell crack and offered crack in exchange." Nothing known to Agent Madore at the time of the vehicle stop suggested that the two were differently situated with respect to the tipped drug trafficking purpose of their trip.

The defendants argue that Hesketh's information was not corroborated by the events that followed because Merritt and Artis, not Mayo, showed up at South Station. But this does not alter the fact that, whoever called Hesketh and offered drugs in exchange

- 11 -

for a ride from Boston to Lewiston, it was Merritt and Artis who showed up at South Station. And, as the district court noted, Hesketh had told Agent Madore from the beginning that he was not sure the caller was Mayo. "[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts," id., and "probable cause determinations hinge not on discrete pieces of standalone evidence, but on the totality of circumstances," United States v. Anzalone, 923 F.3d 1, 5 (1st Cir. 2019), cert. denied, 140 S. Ct. 295 (2019). The fact that Agent Madore learned no new material information after Hesketh's call to Agent Madore from the gas station is irrelevant. Hesketh, a reliable informant with previous drug involvement and a financial incentive to provide good information, was offered drugs in exchange for the transportation to Lewiston. The defendants have waived any argument that, because the information that Hesketh provided to law enforcement about the phone call did not indicate that two people were seeking a ride, officers had probable cause to believe, at most, that one of the passengers was engaged in drug trafficking, but not both.[3]

---

[3] Defendants made this argument for the first time at oral argument. Our review of the record in the district court establishes that no such argument was made there. We asked for and received from defense counsel further briefing on whether they raised this argument to the district court, and it is clear that they did not. The argument was also made in neither the defendants' opening briefs nor their reply briefs. Arguments not advanced before the district court or in a party's briefs and then

Because the defendants have failed to show that Agent Madore did not have probable cause to arrest Merritt and Artis, the defendants' further contentions that their removal from the car and the subsequent dog sniff were unconstitutional are moot. See United States v. Robinson, 414 U.S. 218, 235 (1973). The district court's denial of the motion to suppress was not error.

## III.

Merritt also argues that the district court improperly admitted certain out-of-court statements under Rule 801(d)(2)(E) and/or that those statements should have been excluded under Rule 403. The challenged statements were in Hesketh's testimony. The statements include those reportedly made by the person who called Hesketh to arrange the pickup at South Station; those informing Hesketh of the delayed arrival at South Station while Hesketh and Lemieux waited; and statements Merritt and/or Artis made before getting into the car and while they traveled from Boston to Lewiston, including that Merritt and Artis wanted a place to stay in Lewiston to break down drugs.[4] After admitting the statements provisionally over Merritt's objection, the district court again

---

raised for the first time at oral argument are "doubly waived." United States v. Leoner-Aguirre, 939 F.3d 310, 319 (1st Cir. 2019).

[4]    To the extent that any of the statements at issue were in fact made by Merritt, they were admissible under Federal Rule of Evidence 801(d)(2)(A) as a statement made by an opposing party. Hesketh was not certain whether the statements he remembered from the return trip to Lewiston were made by Merritt or Artis.

denied Merritt's renewed motion to exclude the statements at the close of evidence.

To admit evidence of out-of-court statements made by a defendant's co-conspirator, "the district court must determine by a preponderance of the evidence that the declarant and the defendant were members of the same conspiracy and that the statement was made in furtherance of the conspiracy." United States v. Paz-Alvarez, 799 F.3d 12, 29 (1st Cir. 2015).[5]

"To preserve a challenge to a district court's Petrozziello ruling, a defendant must object on hearsay grounds when his or her coconspirator's statement is provisionally admitted and must renew the objection at the close of evidence." United States v. Ciresi, 697 F.3d 19, 25-26 (1st Cir. 2012). We then review preserved challenges to the Rule 801(d)(2)(E) objection, which the parties agree the challenge in this case is, either for clear error or abuse of discretion. See United States v. Arias, 848 F.3d 504, 516 (1st Cir. 2017) (declining to decide between the two standards). We need not decide which standard

---

[5] The indictment need not include a conspiracy charge (as this indictment did not) to render co-conspirator statements admissible; "[r]ather, the out-of-court statements of one 'partner in crime' will be admissible against a confederate when made in furtherance of a joint criminal venture and when there is sufficient evidence independent of these statements to indicate the existence of such a venture." United States v. Washington, 434 F.3d 7, 13 (1st Cir. 2006) (quoting Ottomano v. United States, 468 F.2d 269, 273 (1st Cir. 1972)).

applies because, under either, this challenge fails.  Review of Merritt's preserved Rule 403 objection is for abuse of discretion, "afford[ing] the district court 'especially wide latitude.'" United States v. Mehanna, 735 F.3d 32, 59 (1st Cir. 2013) (quoting United States v. Candelaria-Silva, 162 F.3d 698, 705 (1st Cir. 1998)).

The district court's conclusion that each of the statements was admissible under Rule 801(d)(2)(E) was not clearly erroneous or an abuse of discretion.  The person who initially called Hesketh arranged the transportation that Merritt and Artis then utilized, offering drugs in exchange.  Hesketh's conversations with that person determined the pickup location and time and led directly to the resulting drug trafficking. Similarly, the person with whom Hesketh communicated by phone while waiting near South Station helped arrange Hesketh's meeting with Merritt and Artis, telling Hesketh and Lemieux that there would be a late arrival.[6]  The person on the phone doing the arranging, whoever that was, made each statement in furtherance of a criminal conspiracy.

Similarly, Merritt and Artis were plausibly co-conspirators: they traveled together to the South Station bus

---

[6]  As the government notes, some of the challenged statements were not offered for the truth of the matter stated and are not hearsay at all.

- 15 -

terminal, each with large amounts of cocaine hidden on their bodies, larger amounts than for personal use. There, they together met Hesketh and the two of them walked around the car together, "ma[king] sure all the lights were working" and that the car "was clean." During the trip to Maine, "they were both very adamant on [the driver] going exactly the speed limit." And they asked Hesketh whether he had a place they could go where they could "post up for a while and break down the drugs." The district court's conclusion that Artis was Merritt's co-conspirator was not clear error or an abuse of discretion.[7]

Merritt's Rule 403 argument also fails. The district court did not abuse its discretion when it found that the statements Merritt sought to exclude were "highly material . . . in terms of what took place." Nothing about the statements is

---

[7] Merritt advances two other meritless arguments. He first argues that there can be no conspiracy between a defendant and a government agent -- here, Hesketh. But the district court did not find that Merritt conspired with Hesketh, and, as to statements by a co-conspirator, "[i]t is immaterial that the person to whom the statement is made is a government informant . . . as long as the statement itself was made in furtherance of the common scheme." Ciresi, 697 F.3d at 28. He secondly argues that the district court's Petrozziello ruling was inconsistent with its later ruling at his sentencing that it would not aggregate the drug quantities possessed by Merritt and Artis for the purpose of calculating Merritt's guidelines sentence. But the district court at sentencing was applying the standard set forth in United States Sentencing Guidelines § 1B1.3(a)(1)(B), which differs by its terms from the Rule 801(d)(2)(E) standard. That the rulings differed does not render the district court's Petrozziello ruling clearly erroneous or an abuse of discretion.

unfairly prejudicial, and Merritt was able to attempt to minimize the effect of the statements.

IV.

Because the defendants have failed to show that the police lacked probable cause to arrest Merritt and Artis before the vehicle stop, we affirm the district court's denial of the motions to suppress. We also reject Merritt's challenges to the evidence admitted at his trial.

Affirmed.