NOT DESIGNATED FOR PUBLICATION

No. 125,963

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDGAR MORENO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed May 23, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., MALONE and COBLE, JJ.

PER CURIAM: Edgar Moreno appeals his convictions in the Sedgwick County District Court of four counts of sexual misconduct with a minor. He contends that the district court erred in failing to suppress his admissions during a police interrogation because the interpreter provided did not meet the requirements of K.S.A. 75-4351 and his admissions were not voluntary for various reasons. Finally, Moreno argues that the State improperly convicted him of sexual exploitation of a child under K.S.A. 21-5510(a)(4) because the offense does not encompass digital images. We find none of these arguments persuasive and affirm his convictions related to those charges. But due to a jury

1

instruction issue divulged by the State, in which the district court failed to define a legal term in its instructions, we find that clear error requires reversal of his conviction on Count 4, sexual exploitation of a child for promoting the performance of sexually explicit conduct by a child under 18 years of age. We reverse Moreno's conviction on that count only and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A.B., a minor child, lived in California when her Mother began dating Moreno. Within a few months, Moreno moved in with the family. Moreno and Mother had three additional children together.

In 2018, the family followed Moreno to Wichita. Over the next few years, they lived in three different residences, on three different streets. But Moreno and Mother separated in early 2021, and Mother took the children to live in a residence provided by Stepstone. The children, however, continued to spend time at Moreno's residence, and A.B. reportedly wished to live with Moreno. Mother and Moreno fought over custody of the children, but the evidence is unclear whether the dispute originated before or after the allegations of sexual abuse surfaced.

On November 3, 2021, Mother visited Moreno about an issue with a shared vehicle. During the discussion, Moreno gave his cellphone to one of the boys to entertain him. When Moreno went to the bathroom, Mother took the cellphone and flipped through its contents. She discovered a video of A.B. undressing, getting into the shower, and then emerging from the shower and redressing. Mother forwarded the video to her own cellphone. The video showed Moreno setting his cellphone in the bathroom and then retrieving it after A.B. exited the bathroom. The bathroom was identified as a room in the house on a specific street, where the family had lived a year earlier. Moreno later admitted to police detectives that he intended to masturbate to the video.

2

Mother called the police to report the video. An officer responded and took Mother's statement, gathered her cellphone, and escorted Mother and the children to the Wichita Police Department's Child Advocacy Center. The police also went to Moreno's residence and arrested him, transporting him to the suspect side of the same police building. Moreno arrived at the building at about 1 a.m.

Different forensic examiners interviewed A.B. and the other children, and a detective interviewed Mother. During her interview, A.B. disclosed that Moreno had been touching her inappropriately on her chest and "between [her] legs" for years, since they lived in California, and that, eventually, the touching by Moreno progressed into sexual intercourse. She told the examiner various details about inappropriate sexual activity initiated by Moreno, specifics of which are not critical to the analyses in this opinion, but which formed the basis for multiple criminal charges against Moreno. A.B. denied that Moreno took the video of her in the shower with her knowledge.

After hearing A.B.'s allegations, Detective Steven Meyer interviewed Moreno with the assistance of a Spanish-speaking police officer, Alondra Rodarte, who was certified by the Wichita Police Department to act as an interpreter for law enforcement. Rodarte was not certified to act as a translator for court proceedings under K.S.A. 75-4351.

Moreno's interview began at approximately 3:30 a.m. and continued until approximately 6 a.m., with a few breaks. Moreno originally denied any inappropriate sexual contact with A.B. He told the detective that he had placed his cellphone in the bathroom to try to record his wife's cellphone conversations with other men. When Detective Meyer confronted Moreno about the video of A.B., Moreno did not express confusion or indicate that he did not know about any video. Toward the end of the interview, after the detective had commented on A.B.'s emotional instability and urged Moreno to take responsibility for his actions, he admitted to having sexual intercourse

3

with A.B. and to having made the video recording of her showering for his own sexual gratification.

The State charged Moreno with aggravated indecent liberties with a child for engaging in sexual intercourse with A.B. when she was 15 years old; indecent liberties with a child for lewd fondling or touching of A.B. when she was 14 or 15 years old; sexual exploitation of a child for possessing a visual depiction in which a child under 18 years of age is shown engaging in sexually explicit conduct with the intent to arouse or satisfy the sexual desires of Moreno; and sexual exploitation of a child for promoting the performance of sexually explicit conduct by a child under 18 years of age. The State later sought to amend the alleged dates for the sexual exploitation of a child to conform to the evidence presented at trial. The district court approved the amendment over Moreno's objection.

Moreno waived his right to a preliminary examination hearing but filed multiple pretrial motions, including a motion to suppress statements he made to police due to their failure to provide a qualified and impartial interpreter. The State sought a *Jackson v. Denno* hearing to establish the voluntariness of Moreno's statements to police. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). The State also asked to introduce evidence of Moreno's sexual conduct with A.B. in California under K.S.A. 2022 Supp. 60-455(d).

At the motions hearing, the State presented the testimony of Rodarte and Detective Meyer, who established that Moreno was provided notice of his *Miranda* rights in Spanish, explained Rodarte's qualifications to act as an interpreter, and disclosed the circumstances of the interview. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Moreno also testified regarding the circumstances surrounding his arrest and interrogation. The district court ultimately concluded that Moreno's statements were voluntary and not the result of unfair coercion. Additional details on the

4

voluntariness of Moreno's admissions are discussed when analyzing Moreno's arguments below. The court also allowed the State to present evidence of Moreno's sexual conduct with A.B. in California under K.S.A. 2022 Supp. 60-455(d).

The case proceeded to jury trial in November 2022. Moreno opted to claim his Fifth Amendment privilege not to testify. The jury convicted Moreno of each of the counts in the amended complaint (Count 1—aggravated indecent liberties; Count 2—indecent liberties; Count 3—sexual exploitation of a child, possessing sexually explicit media of a child under age 18; Count 4—sexual exploitation of a child, promoting sexually explicit performance of a child under age 18), and the court advised Moreno of his duty to register as a sex offender under the Kansas Offender Registration Act (KORA).

Moreno filed posttrial motions for judgment of acquittal and new trial. After hearing arguments at sentencing, the district court denied both motions. Moreno also sought a downward dispositional and durational sentencing departure. The court ultimately concluded that Moreno had failed to articulate substantial and compelling reasons justifying a departure. The parties agreed that Moreno possessed no significant criminal history and was properly scored as an I. For the base offense of aggravated indecent liberties with a child, the district court imposed a prison term of 61 months followed by lifetime postrelease supervision. For Count 4 (sexual exploitation of a child for promoting a sexually explicit performance), the court similarly imposed a sentence of 61 months in prison. For the other two convictions—sexual exploitation for possessing sexually explicit images and indecent liberties with a child—the court ordered Moreno to serve 34 months in prison for each count. The district court ordered all counts to run consecutive, however the total prison term was capped at 122 months pursuant to K.S.A 21-6819(b)(4), which provides that the total prison sentence in a case involving multiple convictions cannot exceed twice the base sentence. The court awarded Moreno 292 days of jail time credit.

Moreno has timely appealed his convictions and sentences.

## THE USE OF AN INTERPRETER NOT QUALIFIED UNDER STATE STATUTE DURING A POLICE INTERROGATION DOES NOT ALONE SUPPORT SUPPRESSION OF MORENO'S ADMISSIONS

Moreno first seeks suppression of his interview with law enforcement as a penalty for the Wichita Police Department's failure to comply with statutory requirements for the appointment of an interpreter. He acknowledges that the district court complied with existing caselaw, holding that the failure to comply with the statutory requirements is not, alone, a reason to suppress a criminal defendant's statements to law enforcement, but contends that law enforcement continually subverts the statutory requirements, knowing that they will not be held to account for any violations. He urges this court to create a new rule, punishing the State for its violation.

Before trial, Moreno filed a motion to suppress his statements to Detectives Meyer and Rodarte because he was not provided a qualified interpreter under K.S.A. 75-4351. Unlike his argument on appeal, however, Moreno did not clearly seek a per se rule for suppression based on the detectives' failure to comply with K.S.A. 75-4351 but argued that the use of an unapproved interpreter along with improper notice of rights and other circumstances rendered Moreno's statements to police "not freely, knowingly and voluntarily made." At the hearing, Moreno raised the issue of Rodarte's qualifications, focusing primarily on the fact that she was not court-appointed, but again acknowledged that the test is the voluntariness of his admissions under a totality of the circumstances. When addressing Moreno's motion, the district court likewise considered Rodarte's qualifications in the context of considering Moreno's autonomy during the interview. The district court specifically addressed Moreno's argument that the interpreter needed to be court-appointed, ruling that "appointment" simply meant used and that the key was the individual's qualification to act as an interpreter. Because the district court interpreted the

statute in a manner that suggested no violation occurred, it did not really address the remedy for a violation.

In the district court, the parties and the court danced around the specific issue presented on appeal. But it is unnecessary to determine whether Moreno's appellate issue is properly preserved. Moreno's trial and appellate attorneys both note that the argument is controlled by Kansas Supreme Court precedent. Absent some indication that the Kansas Supreme Court is deviating from that precedent, this court is also bound to apply it. *State v. Harris*, 64 Kan. App. 2d 432, 444, 551 P.3d 240 (2024).

In *State v. Zuniga*, 237 Kan. 788, 791-92, 703 P.2d 805 (1985), the court held:

> "The purpose behind K.S.A. 75-4351(e) is to ensure that there is clear communication between one who is in custody and the officers who are questioning him. The statute does not state a rule of evidence. Whether or not an interpreter is appointed and is present at the taking of the statement, the trial court must still determine whether an in-custody statement was freely, voluntarily and knowingly given, with knowledge of the *Miranda* rights. That determination must be based upon the totality of the circumstances."

The rule in *Zuniga* has been applied consistently by the Kansas appellate courts. See, e.g., *Khalil-Alsalaami v. State*, 313 Kan. 472, 495-96, 486 P.3d 1216 (2021) (refusing to presume prejudice for ineffective assistance of counsel because K.S.A. 75-4351 creates no new constitutional protections); *State v. Pham*, 281 Kan. 1227, 1240-41, 136 P.3d 919 (2006); *State v. Garcia-Barron*, 50 Kan. App. 2d 500, 503, 329 P.3d 1247 (2014); *State v. Fursov*, No. 125,209, 2023 WL 5813743, at *3 (Kan. App. 2023) (unpublished opinion), *rev. denied* 319 Kan. 835 (2024). Because Moreno can point to no appellate decision that calls the reasoning of *Zuniga* into doubt, we are bound to apply the same reasoning. *Harris*, 64 Kan. App. 2d at 444.

Even if we could distinguish the circumstances of *Zuniga* in a way that would produce a different result, the circumstances of Moreno's case do not warrant a different application of K.S.A. 75-4351. Moreno argues that the State is emboldened to ignore the requirements of K.S.A. 75-4351 because the courts do not punish the State for its violations. But, when, as here, the entire interview is recorded, the State runs a substantial risk by failing to obtain a qualified interpreter because the interview can be reviewed by a subsequent translator or interpreter to reveal any flaws in the quality of the interpretation that might lead to the suspect's confusion. Moreno could have solicited the aid of his own interpreter to review the video recording of the interview and then could have used any translation errors to cross-examine or impeach Detective Meyer, Rodarte, or both. The fact that Moreno did not choose to challenge the accuracy of Rodarte's translation when contesting the admission of his statements is persuasive circumstantial evidence of its accuracy. This case, therefore, does not warrant an exception to the rule announced in *Zuniga*, even if we were authorized to create one.

## THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT MORENO'S ADMISSIONS TO LAW ENFORCEMENT WERE VOLUNTARY AND THEREFORE ADMISSIBLE AT TRIAL

Even if we do not accept his penalty argument, Moreno also challenges the district court's conclusion that his statements to law enforcement were voluntary. The State first responds that our review is limited to the grounds for suppression argued in the district court.

*Preservation*

As previously noted, Moreno filed a pretrial motion to suppress his admissions to law enforcement, arguing that he was not provided with a qualified interpreter, the statements were taken without the benefit of *Miranda* warnings, and his statements were not freely, knowingly, and voluntarily made. At the motions hearing, Moreno's counsel expanded on the voluntariness claim but focused on Moreno's mental condition based on

8

his alcohol and drug use and sleeplessness and on Rodarte's translator qualifications. He did not argue before the district court, either in his written motion or during the hearing, that the detectives' allegedly coercive techniques undermined Moreno's free and independent will.

K.S.A. 60-404 requires a party to lodge specific objections to alleged errors at trial so that the district court has full opportunity to consider the admissibility of the evidence. Appellate review is precluded if a party objects to evidence on one ground at trial and then asserts a different ground on appeal. See *State v. Reed*, 300 Kan. 494, Syl. ¶ 6, 332 P.3d 172 (2014). There are, however, exceptions allowing consideration of newly raised appellate issues, including new issues involving only questions of law concerning proved or admitted facts that are determinative of the case. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

Nevertheless, the Kansas Supreme Court has placed the procedural burden on a party raising a new issue on appeal to comply with court rules and explain why the issue is properly considered. See Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36); *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Moreno has not argued for the application of an exception, apparently presuming that the issue was sufficiently preserved.

The State is correct that Moreno's arguments about the reportedly coercive techniques used by Detective Meyer during the interview are not properly before us. See *State v. Walker*, No. 118,104, 2018 WL 6580105, at *4 (Kan. App. 2018) (unpublished opinion) (refusing to consider coercive nature of interrogation for the first time on appeal because the issue was not raised in the district court); *State v. Johnson*, No. 107,086, 2013 WL 5303512, at *8 (Kan. App. 2013) (unpublished opinion) (refusing to consider contribution of marijuana use to voluntariness determination for the first time on appeal when issue not argued at the hearing). And the Kansas Supreme Court has placed the

burden on the appellant to have challenged an allegedly involuntary confession in the district court or find himself having waived the issue. This burden includes raising the specific grounds for contending the statements were made involuntarily. See *State v. Miles*, 233 Kan. 286, 296, 662 P.2d 1227 (1983) ("We therefore conclude that Kansas procedure does, consistent with the United States Constitution, require that appellant's confession be challenged prior to or during the trial or not at all. The appellant's failure to request a hearing or timely object to the admission of his confession waives his right to raise that issue for the first time on appeal unless the opportunity to object did not exist.").

Likewise, our discretion to consider the precise issue of the detectives' allegedly coercive techniques for the first time is substantially limited, even if Moreno had properly asserted an exception. See *State v. Unruh*, 320 Kan. 260, 264-65, 565 P.3d 825 (2025) ("[I]t is not enough for a party simply to assert an exception's existence. The unpreserved issue must be amenable to resolution on appeal, and even then, there is no obligation to consider it. When an insufficient record prevents resolving an unpreserved issue, an appellate court abuses its discretion by invoking an exception.").

Though the interview was recorded and included in the record on appeal, this court does not make fact determinations, even if the record is sufficient to permit them. *State v. Nelson*, 291 Kan. 475, 488, 243 P.3d 343 (2010) ("This court has repeatedly held appellate courts do not make factual findings, even if the record is sufficient for the court to reach the factual issues. Fact-finding is simply not the role of appellate courts."); *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 513, 110 P.3d 438 (2005) ("[A]n appellate court may not speculate as to what may have existed at the time of the hearing but rather must consider the evidence of record and base its decisions on facts in the record."). By raising new grounds for finding his statements to the police involuntary, Moreno appears to ask us to redetermine the relevant facts.

Moreno did not preserve his specific objection regarding the detectives' allegedly coercive techniques at trial and offers no exception as to why we should hear the issues on appeal, or why we should, as the appellate court, act as a fact-finder. For these reasons, we decline to address his arguments as to the alleged coercion of law enforcement as part of the circumstances surrounding his interrogation. But we continue to examine the remainder of his arguments.

*Voluntariness Determination—Totality of Circumstances*

Notably, though he did so before the district court, Moreno does not challenge the viability of his waiver of his *Miranda* rights on appeal, so that argument is waived. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issue not briefed is deemed waived or abandoned). Accordingly, we are left to examine three challenges to the voluntariness of his confession:  the lack of an impartial interpreter, his use of drugs and alcohol prior to his police interview, and his lack of sleep preceding and during his interrogation, under what he claims as a Fifth Amendment due process theory. See *State v. Sesmas*, 311 Kan. 267, 275, 459 P.3d 1265 (2020).

A confession may violate the Due Process Clause of the Fifth or Fourteenth Amendments in two ways. First, if the interrogation method is inherently coercive—i.e., involving extreme psychological pressure, torture, or significant physical deprivations—then the interrogation is a per se violation of due process. *State v. G.O.*, 318 Kan. 386, 397-98, 543 P.3d 1096 (2024). This does not appear to be the basis for Moreno's argument. Second, a confession may be obtained in violation of due process where the circumstances suggest that the confession was not the product of a free and volitional choice. 318 Kan. at 398. As Moreno repeatedly states his confession was not freely and voluntarily given, he bases his argument on this second theory.

11

Traditionally, when considering the voluntariness of a confession, courts consider six nonexclusive factors, including (1) the suspect's mental condition; (2) the manner and duration of the interview; (3) the suspect's ability to communicate with the outside world when requested; (4) the suspect's age, intellect, and background; (5) law enforcement's fairness in conducting the interview; and (6) the suspect's fluency with the English language. The factors are not weighed against each other or given equal weight necessarily. The circumstances of a particular case may dissipate the importance of one factor or increase the significance of a factor. The overarching question is whether a factor or a combination of factors inevitably lead us to a conclusion that a suspect's will was overborne and the confession was not a free and voluntary act, under the totality of the circumstances. 318 Kan. at 401.

These factors have recently been categorized by the Kansas Supreme Court into two types: (1) circumstances related to the interrogation, and (2) circumstances related to the suspect's strength of will. 318 Kan. at 402. The district court, of course, did not have the benefit of *G.O.*'s guidance, due to the recency of that decision, but the categorization is not a new standard so much as a reclassification of existing standards.

An appellate court applies a dual standard of review to consideration of the voluntariness of a confession. *Sesmas*, 311 Kan. at 275. The court first reviews the district court's factual findings for substantial competent evidence. In considering the evidence, the appellate court does not weigh the evidence or assess the credibility of witnesses. The court then conducts an independent determination of the ultimate legal conclusion based on the established facts. *G.O.*, 318 Kan. at 407.

When considering whether a confession was the product of an overborne will, characteristics of the person being questioned are material. The appellate courts have identified an inexhaustive list of considerations a court may evaluate when determining the character of the interrogated suspect. They include age, maturity, intellect, education,

fluency in English, physical condition, mental condition, emotional condition, and experience, including experience with law enforcement. *G.O.*, 318 Kan. 386, Syl. ¶ 7. Moreno focuses on English fluency, his lack of experience with law enforcement, and his physical condition—specifically his fatigue and alcohol and drug use.

The district court made findings that excluded several of these attributes. During the *Jackson v. Denno* hearing, the court concluded that Moreno's testimony that he was under the influence of alcohol or drugs was not credible because he had told the officers at the time of the interview that he had not been under the influence of drugs or alcohol. Additionally, the district court's review of the video failed to reveal any indication of impairment. Because the district court's findings are supported by substantial competent evidence, we cannot disturb those findings on appeal. *G.O.*, 318 Kan. at 407.

Furthermore, as previously discussed, Moreno's lack of English fluency was mitigated by the presence of an interpreter. Even if Rodarte did not meet the qualifications of K.S.A. 75-4351, the record contains no evidence that undermines her competency. Moreno appeared to have a reasonable rapport with the interpreter and did not appear to have difficulty understanding the questions posed by Detective Meyer through Rodarte. Moreno's responses were appropriate, indicating comprehension. The district court similarly found that Rodarte was competent to act as a translator. This finding comports with the legislative purpose of K.S.A. 75-4351. See *Zuniga*, 237 Kan. at 791 ("The purpose behind K.S.A. 75-4351[e] is to ensure that there is clear communication between one who is in custody and the officers who are questioning him."). Consequently, Moreno's lack of English fluency did not contribute significantly to a coercive atmosphere during the interrogation.

While the video does show that Moreno was tired—based on numerous yawns and him rubbing his face—there is nothing in the video to suggest he was so tired that he was incapable of rational thought. The circumstances of his normal routine also cut against a

13

finding that fatigue contributed to coercion. Moreno testified that he routinely came home from work, began drinking alcohol, which he continued until about 3 a.m., went to bed, and slept until 6 a.m., when he would get up to go to work again. He testified that he worked as a cook for a food truck. His routine demonstrated that he regularly operated on little sleep. Given this background, an hour-long interview even in the middle of the night would not necessarily have as great an impact on Moreno as it would have on someone who routinely went to sleep at 10 or 11 p.m. and slept a full 8 hours. And, again, while the video shows Moreno yawning frequently, especially toward the end of the interview, Moreno was not nodding off or requiring the officers to repeat questions. The district court specifically found that Moreno's fatigue did not significantly impact his ability to respond to questions, and this finding is also supported by substantial competent evidence.

One of the strongest pieces of evidence of Moreno's voluntariness, however, is that he retained the ability to disagree with some of Detective Meyer's assertions. Though the detective systematically chipped away at Moreno's story, he did not simply provide automatic affirmative responses to Detective Meyer's questions. The video demonstrates that Moreno listened carefully to the translated questions and occasionally he asked Rodarte various clarifying questions. This sort of engagement does not indicate a will overcome by police coercion. Cf. *State v. Reynolds*, 65 Kan. App. 2d 337, 367, 564 P.3d 404 (2025) (intellectually challenged individual with history of being bullied susceptible to coercion, as evidence by his agreement with leading statements posed by detective), *rev. denied* 320 Kan. ___ (March 13, 2025).

Though Moreno testified at the *Jackson v. Denno* hearing, he never indicated that he felt intimidated by Detective Meyer or that he merely agreed to the detective's statements to end the interrogation. Instead, he claimed that, due to his use of alcohol and drugs and lack of sleep, he had difficulty comprehending what was happening at the time

of his police interview and could not remember details of the interview at the time of trial.

Based on the fact-findings by the district court that were supported by substantial competent evidence and that established the material circumstances, we find that Moreno's confession does not appear to have been the product of government coercion to the extent that Moreno's independent will was overborne.

## THE SEXUAL EXPLOITATION OF A CHILD STATUTE ENCOMPASSES MORENO'S CONDUCT IN RECORDING A.B.

Moreno's final argument challenges the sufficiency of the State's evidence supporting his conviction for sexual exploitation of a child under K.S.A. 21-5510(a)(4)—promoting any performance of sexually explicit conduct by a child under 18 years of age. His challenge is limited to reasoning that the statutory definition of performance does not encompass electronic images.

Typically, a challenge to the sufficiency of evidence supporting a criminal conviction is reviewed on appeal under a deferential standard. An appellate court reviews the record in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). In this appeal, though, Moreno does not argue that the State failed to present evidence that he took a digital recording of A.B. engaging in sexually explicit conduct. Instead, he contends that "performance" as statutorily defined does not encompass electronic or digital recordings.

As alleged in the complaint, Moreno took the video of A.B. between May 5, 2020, and May 4, 2021. K.S.A. 21-5510 was last amended in 2017. L. 2017, ch. 78, § 12. Accordingly, the current version of the statute applied to Moreno. As charged in Count 4,

15

sexual exploitation of a child is "promoting any performance that includes sexually explicit conduct by a child under 18 years of age . . . knowing the character and content of the performance." K.S.A. 21-5510(a)(4). Promoting includes procurement of the sexually explicit performance. K.S.A. 21-5510(d)(2). Performance is statutorily defined as:

> "any film, photograph, negative, slide, book, magazine or other printed or visual medium, any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk or any play or other live presentation." K.S.A. 21-5510(d)(3).

Moreno contends that, because this definition of performance does not specify digital recordings taken with a cellphone camera, his conviction for sexual exploitation of a child under K.S.A. 21-5510(a)(4) cannot stand. His argument raises a question of statutory interpretation, and appellate review of such questions is unlimited. See *Mendez*, 319 Kan. at 736.

Moreno relies on the reasoning of *State v. Donham*, 29 Kan. App. 2d 78, 24 P.3d 750 (2001). *Donham* involved the interpretation of a different subsection of the sexual exploitation of a child statute, namely K.S.A. 21-5510(a)(2), involving possession of visual depictions. Donham had been charged with 90 counts of possession of enumerated items containing sexually explicit visual depictions. The issue in the case involved multiplicity—whether Donham could be charged for each visual depiction or only for possession of one of the enumerated items that contained the visual depictions, regardless of the number of depictions. Concluding that the statute limited possession to one of the enumerated items and not to possession of each individual visual depiction, we concluded Donham's 90 convictions were multiplicitous.

16

"The only other way to justify charging Donham with 90 counts of sexual exploitation of a child is to interpret the statute as prohibiting possession of each sexually explicit image of a child stored on or retrieved from a floppy disk. Rules of statutory construction, however, prevent such an interpretation because reading the statute to prohibit possession of each sexually explicit image of a child retrieved from a floppy disk would be rewriting the statute to add a new element. '"The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be read so as to add that which is not readily found therein." [Citation omitted.]' *In re Tax Appeal of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, 868, 909 P.2d 673 (1995). Moreover, 'criminal statutes must be strictly construed in favor of the accused.' *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998). Nevertheless, criminal statutes are not to be construed so strictly as to defeat the clear intention of the legislature. *State v. Roderick*, 259 Kan. 107, 110, 911 P.2d 159 (1996).

"If the legislature had intended to criminalize possession of each sexually explicit image of a child contained on a floppy disk, the legislature would have included language such as possession of any image stored on or retrieved from a floppy disk as a means of violating the statute. This language is missing from K.S.A. 2000 Supp. 21-3516(a)(2)." *Donham*, 29 Kan. App. 2d at 83.

Through a similar reasoning process, Moreno contends that electronic or digital image is not included in the definition of "performance" and therefore does not cover his conduct within the scope of the statute. The State responds that the statutory definition is much broader than Moreno claims because it encompasses "'any . . . other printed or visual medium.'"

The State relies on *Greenwood v. State*, 30 Kan. App. 2d 870, 50 P.3d 105 (2002), to argue that the legislative intent behind the broad definition of performance was to encompass all mediums through which sexually explicit images of children may be portrayed.

"We hold the type of conduct exhibited and admitted by Greenwood is precisely the type of conduct prohibited by the statute; neither *Donham* nor [*State v.*] *Zabrinas*[,

17

271 Kan. 422, 24 P.3d 77 (2001)] holds otherwise. We simply give effect to the obvious legislative intent, rather than speculate on what the law should or should not be. See *State v. Roderick*, 259 Kan. 107, 110, 911 P.2d 159 (1996). Here, the factual basis for Greenwood's plea is that he was in possession of computer hardware containing photographic images and movies depicting sexually explicit conduct by children." 30 Kan. App. 2d at 872.

One might conclude that a distinguishing feature between *Greenwood* and Moreno's case is that Greenwood's sexually explicit images, though digital, were found stored on a computer, which falls directly within the scope of "computer related equipment" that contains photographic images and film. Here, Moreno's "film" was contained on a cellphone, not a computer. That distinction may have been significant years ago, but today, the distinction between a cellphone and computer is a distinction without much difference.

"Computer" carries the common definition of "a device used for computing and otherwise processing information . . . an electronic machine which, by means of stored instructions, is used to perform rapid, often complex calculations, compile and correlate data, download and play audio and video communications, access the Web, send and receive email, etc. . . ." Webster's New World College Dictionary 307 (5th ed. 2021). Most cellphones that possess the capability to take and record digital images are computers in the broad sense of the term, as today's cellphones can perform every function within this common definition of a computer. The United States Supreme Court has acknowledged as much. In *Riley v. California*, 573 U.S. 373, 393, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014), the Supreme Court said that "many of these [cellphone] devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." See also *United States v. Corleto*, 56 F.4th 169, 173 (1st Cir. 2022) ("The warrant also authorized the seizure of '[a]ny computer . . . that [was] or may have been used as a means to commit the offenses described on the warrant,' employing a broad definition of 'computer' that included smartphones."). Other courts have acknowledged

18

that "a modern cell phone can be synced with a personal computer, tablet, or other device so that a person can access all of his information whenever he likes from wherever he likes." *In re Cellular Telephones*, No. 14-MJ-8017-DJW, 2014 WL 7793690, at *5 (D. Kan. 2014) (unpublished opinion) (citing *United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999). By using the phrase "computer related equipment or computer generated image," the definition of "performance" in K.S.A. 21-5510(d)(3) encompasses digital images processed by a smartphone, either in recording or playback.

But we need not entirely rely upon the definition of a computer to find the statute encompasses Moreno's conduct. The plain language of the statute includes "any . . . visual medium, any audio . . . recording or any . . . computer generated image that contains . . . . any . . . live presentation." K.S.A. 21-5510(d)(3). The video on Moreno's cellphone was a live presentation of a recording, no doubt through a visual medium. Moreno's attempt to narrow the statute's language is unpersuasive.

AN INSTRUCTIONAL ERROR REQUIRES REVERSAL OF COUNT FOUR

Although not raised by Moreno, the State candidly admits in its brief that it discovered a concern during its review of this case on appeal. When instructing the jury on Count 4, brought pursuant to K.S.A. 21-5510(a)(4), sexual exploitation of a child by promoting any performance of sexually explicit conduct by a child under 18 years of age (discussed in the previous section), the district court included the definitions of various words and phrases contained in the sexual exploitation statute. But when setting out the statutory definition of "performance" found in K.S.A. 21-5510(d)(3) (as discussed above), the court mistakenly provided not the definition for "performance" we recited in the previous section, but the definition of "visual depiction"—a definition which is found in a different subsection of the statute, K.S.A. 21-5510(d)(5). Due to this error, which apparently went unnoticed during trial, the jury was never given the correct statutory

19

definition for "performance." And, as discussed herein, performance is a required element of the crime charged in Count 4, sexual exploitation of a child.

The State frankly concedes its belief that Moreno's conviction for Count 4 should be reversed and this case remanded based on the instructional error. We agree. Our Supreme Court just recently examined a district court's failure to instruct on uncommon, statutory definitions in *State v. Ballard*, 320 Kan. 269, 284-85, 566 P.3d 1092 (2025).

In *Ballard*, the appellant was convicted by a jury in the district court of two counts of failing to register as sex offender under KORA, and appealed the conviction related to his failure to register as a "transient" offender, claiming he was not transient but slept at his brother's home despite walking around a local food kitchen. On appeal, he argued that the court committed clear error when it failed to instruct the jury on KORA's definition of "transient" and the related KORA definitions of "reside" and "residence." 320 Kan. at 270. Ultimately, the Supreme Court found the district court erred by not instructing the jury on KORA's definitions. It determined that the "differences between KORA definitions and definitions provided by the witnesses and by the prosecutor in closing argument and the differences between KORA definitions and the common understanding of the words weigh toward determining the lack of a jury instruction defining terms was clear error." 320 Kan. at 283.

Although judges need not define all terms used in jury instructions, jury instructions must properly and fairly state the law. 320 Kan. at 279 (citing *State v. Coleman*, 318 Kan. 296, 313, 543 P.3d 61 [2024]). Here, the definition provided in the instruction was clearly a misstatement of law. And, although performance is not an uncommon term of usage, the term's legal usage is more nuanced, as evidenced by our discussion regarding what does and does not fall within the statutory definition of performance in the previous section. Where the Legislature has defined words, and where those definitions are not consistent with ordinary, lay meanings of those terms, this

20

"weigh[s] toward determining the lack of a jury instruction defining terms was clear error." 320 Kan. at 283.

We find the district court's error in failing to provide the statutory definition of "performance," a required element of the crime charged in Count 4, is clear error that requires us to reverse Moreno's conviction on that count. Having found the evidence otherwise sufficient on his remaining challenge to his conviction on that same count, we reverse Moreno's conviction on Count 4, sexual exploitation of a child, and remand the case for further proceedings on that charge. Any additional proceedings should include any necessary resentencing, in the event the charge is not re-tried, since all counts were to run consecutive, however the total prison term was originally capped pursuant to K.S.A. 21-6819(b)(4). The remainder of Moreno's convictions are affirmed.

Affirmed in part, reversed in part, and remanded with directions.